Judge Ewing
delivered the Opinion of the Court.
Thomas W. Jackson filed his bill against the administrators of Samuel W. Jackson, setting up a note for one thousand dollars, with interest from its date, which he alleged was executed by the intestate, his uncle, some five years before his death, payable after his death, and of which he was robbed, together with his pocket book and money, some months after the death of the decedent, by some person unknown to him, and has never succeeded in recovering the same.
The bill being dismissed by the Circuit Court on the hearing, the complainant has brought the case to this Court.
First. It is objected that the collateral relationship existing between the payor and payee, was not a sufficient consideration to support the note.
Second. That the execution and existence of the note is not sustained by the proof.
Waiving the question, whether the consideration relied on would be sufficient to uphold the note, as an ordinary note, payable in the lifetime of the intestate: it was said by Lord Hardwick, in the case of Ross vs. Ewer, 3 Atkyns, 163, that “ that nothing required so little so-1 -1 1 • r- -n 4 í- 1 , , lemmty as the making of a will Li personal estate, ac *258 COrding to the Ecclesiastical laws, for there is scarcely any paper writing which they will not admit as such.”
Held that the note of an ucle, payable afto his nephew’ might, without other consideration, be sustained as a testamentary provision.
A court of ch’y will take juris diction of a case ting” Vuf very clear proof of its execution & coned.
The facts which render the genu, ineness of the lost note in this case, too questionable for it to be made the foundation of a decree.
*258 Indeed, it has been regarded as settled according to the adjudications of the English courts,, that the form <3°es not a^ect the validity of the instrument, as a testament of personalty, provided it appears to have been the intention of the decedent that it should operate after his death. Masterman vs. Maberley, 2 Haggard; Green vs. Oglander, 2 Hagg. 432; The King's Proctor vs. Daines, 3 Hagg. 221; Habergham vs. Vincent, 2 Ves. jun. 231; 1 Williams on Executors, 5 3-4-5. thus deeds, bonds, drafts on bankers, notes, endorsements on notes, and, many 77 7 J other forms of instruments have been held to be testamentary. And it has been said that it does not matter whether the testator intended, in the execution of the instrument, merely to perform á testamentary act, if the paper contains a disposition of property to take effect af- ,. , ,, . , . , ter his death. 11 it cannot operate, inter vivos, it may, nevertheless, operate after the death of the donor — provided it be made to depend for its consummation upon his death. Masterman vs. Maberley, and Williams on Executors, supra, and the authorities there referred to.
Without determining whether the same rules should be adopted and applied to wills oí personalty here, to ^eir fuj{ extent, we are satisfied that the instrument in question, ii proved, so tar partakes oí a testamentary provision, that it may and ought to be sustained, without further consideration to support it, than that which is averred.
We are equally clear that a court of chancery will entertain jurisdiction to afiord relief, where the mstrument has been lost or destroyed “upon the head of spoliation or suppression.” Tucker vs. Philips, 3 Atkyns, 360; Williams on Executors, 185; 2 Vernon, 441; 7 Ba. Ab. 320.
But in such cases, the execution and former existence of the instrument, must be plainly made out, and'clearly established. Authorities supra. A court of chancery will not give relief in a doubtful case.
And after the mostjminute and careful examination of the proofs exhibited,! and circumstances attending the *259 case under consideration, we are left, not only in doubt, as to the material facts essential to be established to entitle the complainant to redress in a court of equity, but the preponderance of our convictions is against his claim.
We deem it unnecessary to enter into a critical analysis of the testimony, to show the grounds of our conviction. Suffice it to say, that the proof of the material facts — namely, the execution of the note and its amount, and terms, and time of payment — all essential to be clearly made out, are drawn from a single witness, who stands impeached, mostly by leading questions, and whose tale is so incredible as to excite strong suspicion of its fabrication.
The statements of the two relations of the complainant, who speak of what the decedent, the pretended deceased subscribing witness, and Rucker, said, are too general and indefinite to lead the mind to any satisfactory conclusion. We cannot feel justified in basing a decree upon such testimony, when it stands opposed by the improbable ground assumed, and attempted to be sustained by the single witness, that the note was given to the complainant, who was poor, to aid him in the prosecution of the study of medicine, though not made payable until after the death of the payor, who might have calculated on living many years; and by the still more incredible circumstances that it was executed in a vacant school house, several miles from the residence of the decedent, in the dead of winter, without fire, and was never spoken of by Rucker to his family; some of whose depositions seem to have been taken in this cause, nor spoken of or shown by the complainant to father, mother, brother, sister or any other living mortal, though he claims to have held it for near five years before, and some months after the death of his uncle.
These various draw-backs upon the claim of the complainant have brought us to the conclusion, that the decree of the Circuit Court was right and ought not to be reversed. Wherefore, it is affirmed with costs.