ARENDT *v.* ARENDT.

Opinion delivered Oceober 8, 1906.

1. WILL—UNIMPEACHABLE WITNESS.—A witness to the handwriting and signature of an alleged testator is "unimpeachable" within the meaning of Kirby's Digest, § 8012, where there was no evidence reflecting on his character or testimony. (Page 207.)

2. SAME—LETTER.—A letter written by decedent just before he committed suicide, being wholly in his handwriting and signed by him, in which he directed the disposition of his goods, is such a will as may, under Kirby's Digest, § 8012, be established by the unimpeachable testimony of three disinterested witnesses to his handwriting and signature. (Page 207.)

Appeal from Pulaski Circuit Court; *Edward W. Winfield,* Judge; affirmed.

On the 7th day of February, 1904, William Arendt shot and killed himself at his residence in Little Rock. After his death about nine or ten o'clock at night of the day of his death, the following letter was found on the dresser of his bedroom:

"Little Rock, Ark., 2-7-1904.

"Mrs. Sarah Arendt, City.

"Dear wife: You will find everything all right, I hope. Whatever I have in worldly goods, it is my wish that you should possess them. I have hoped against hope that everything would come out all right, but I see it is useless. Please mail those letters that I handed you, is all I ask of you. So good-bye, sweetheart.

"Yours,

"WILL."

Mrs. Sarah Arendt in due time offered this letter for probate as the will of her husband, William Arendt, and the same was probated as such by the probate court of Pulaski County. Herman Arendt, the father of William Arendt, appealed from that judgment.

On the trial in the circuit court the case was submitted to a jury, who returned the following verdict:

"We, the jury, find the instrument propounded for the last will and testament of William Arendt, deceased, to have been written, both in the body and signature, in the proper handwriting of said Wiliam Arendt, and we find this fact established in the manner required by the statute, and we find said instrument to be the last will and testament of William Arendt.

[Signed]                    "GEORGE R. BROWN, Foreman."

The court gave judgment accordingly, and Herman Arendt appealed.

*Fulk, Fulk & Fulk* and *Geo. W. Williams,* for appellant.

1. The paper propounded may as well be construed to be an attempted gift *inter vivos* as a will. It does not in terms state that it depends upon the death of the maker. "It is essentially

requisite that the instrument should be made to depend on the event of death, as necessary to consummate it." 1 Williams, Exrs. *92. Unambiguous words must control, and can not be varied. The paper must show unmistakably that it is a testamentary disposition, and the intent must be drawn from the will and not the will from the intent. 1 Red. Wills, *431; 15 L. R. A. 635; 2 Am. & Eng. Enc. Law, 304; 2 Phill. Ev., note, 638; 2 Wharton, Ev. § 992. See also 27 La. Ann. 42; 77 Conn. 604; Page on Wills, 45-6 and notes; 76 Miss. 840; 86 Ala. 112; 3 Haggard, 89; 23 Ark. 386.

2. The language of the statute is peculiar with reference to the proof required to establish a holographic will, in that it requires that it "be established by the *unimpeachable evidence* of at least three disinterested witnesses to the handwriting and signature." This statute never contemplated property being disposed of on the doubtful testimony of witnesses who could not identify, or who questioned the genuineness of, another letter which was shown to have been written by the deceased. 37 L. R. A. 261 and notes.

3. Instructions asked by appellant on the question of insanity should have been given. Although partial insanity does not as a rule render a testator incapable of making a will, unless the insanity enters into or affects the will, yet, if the statute permits only persons of sound mind to make wills, then a person partially insane can not make one that is valid. 17 Am. L. Reg. 383. See 45 Ala. 378; 1 Littell (Ky.), 371; 16 Am. L. Reg. 97.

*J. H. Harrod,* for appellee.

1. The mere form of a will is immaterial. It has been held that a writing without any of the formalities of a will, but in the form of a letter signed only by the given name of the party, was a valid will. 6 L. R. A. 356.

2. The jury were properly instructed that if the instrument was not established by unimpeachable evidence of three disinterested witnesses, they should find that it was not a valid will. They were also correctly instructed as to the meaning of unimpeachable evidence. Their finding is conclusive.

3. The jury were fully and fairly instructed on the question of insanity and of suicide. Insanity can not be predicated simply

upon the act of self-destruction, for human experience has shown that sane men have taken their own lives. 63 L. R. A. 350.

RIDDICK, J., (after stating the facts.) This is an appeal by Herman Arendt from a judgment of the circuit court declaring a certain writing in the form of a letter to be the last will and testament of William Arendt.

Our statute provides that "when the entire body of the will and the signature thereto shall be written in the proper handwriting of the testator, such will may be established by the unimpeachable evidence of at least three disinterested witnesses to the handwriting and signature of the testator, even though there be no attesting witness." Kirby's Digest, § 8012.

On the trial of this case in the circuit court the court told the jury that to be valid as a will both the entire body of the instrument in question and the signature thereto must be in the handwriting of William Arendt, and that this must be established by the unimpeachable evidence of at least three disinterested witnesses; that by "unimpeachable witness" is meant one whom the jury find to have spoken truthfully, and whose conclusion they find to be correct.

When applied to the facts of this case, we think this statement of the law is substantially correct. There is nothing in the evidence reflecting on the character or testimony of these witnesses who testified to the handwriting and signature of the deceased, and we think it was clearly established by their testimony that the instrument in question was written and signed by William Arendt a short time before his death.

This will is in the form of a letter from William Arendt to his wife. But, to quote the language of a distinguished author, "the law has not made requisite to the validity of a will that it should assume any particular form, or be couched in language technically appropriate to its testamentary character. It is sufficient that the instrument, however irregular in form or inartificial in expression, discloses the intention of the maker respecting the posthumous destination of his property; and if this appear to be the nature of its contents, any contrary title or designation which he may have given to it will be disregarded." 1 Jarman on Wills (6 Ed.), 21; *Whyte* v. *Pollock,* 7 Appeal Cases, 409.

There are many decisions that illustrate this rule of law.

The Supreme Court of California held that a writing in the following language was a will, and admitted it to probate: "Dear Old Nance, I wish to give you my watch, two shawls and also five thousand dollars. Your old friend, E. A. Gordon." *Clarke* v. *Ransom,* 50 Cal. 595.

So the Supreme Court of North Carolina held the following unattested writing to be a will: "It is my wish and desire that my good friend and relative, Dr. Joseph B. Outlaw, have all my property of every description. David Outlaw." *Outlaw* v. *Hurdle,* 1 Jones, Law, 150. The same court in a much more recent case held that a letter from the testator to his sister, in which he said: "If I die or get killed in Texas, the place must belong to you, and I would not want you to sell it," was a valid will. *Alston* v. *Davis,* 118 N. C. 202.

There are many other cases to the same effect. *Webster* v. *Lowe,* 107 Ky. 293; *Jackson* v. *Jackson,* 6 Dana, 257; *In Succession of Ehrenberg,* 21 La. Ann. 280, 99 Am. Dec. 729; *Sullivan's Estate,* 130 Pa. St. 342; *Byers* v. *Hoppe,* 61 Md. 206; *Cover* v. *Stem,* 67 Md. 449; Gardner on Wills, page 69.

The evidence proves that William Arendt was sincerely attached to his wife, and the language of this letter to her, written under the shadow of impending death, shows, in our opinion, that it was testamentary in character and intended to direct the disposition of his property after his death, and we are of the opinion that the circuit court properly so held.

As to the question of his sanity, there is very little to show insanity beyond the fact that he became estranged from his brothers and afterwards committed suicide for what seemed a very trifling cause. Numbers of his friends and acquaintances testify that he never at any time exhibited signs of insanity, but acted at all times up to his death as a man of sound judgment and reason might be expected to act.

The finding of the jury on this question, we believe, was correct. The instructions of the court on this point, as well as those instructions refused by him, were somewhat lengthy; but we have read them carefully, and find no prejudicial error. On the whole case, we are of the opinion that the judgment should be affirmed. It is so ordered.