5-3783                                          399 S. W. 2d 655

Opinion delivered March 7, 1966

*Fitton & Meadows,* for appellant.

*N. J. Henley,* for appellee.

JIM JOHNSON, Justice. This appeal is from denial of a petition to set aside probate of a will.

On September 24, 1962, Boyd Ruff died leaving surviving his wife, no issue, three brothers and a sister. After his funeral Mrs. Ruff found in his wallet a blank check on the back of which was written a purported holographic will. On March 13, 1964, Modene Ruff, the widow, filed a petition in Searcy Probate Court for admission of the instrument to probate as a will, nominating appellee Rex Younes as administrator with will annexed. On March 14th the instrument was admitted to probate and letters of administration issued to appellee on March 19, 1964.

On September 11, 1964, appellant Lois R. Chambers, sister of decedent, filed a petition to set aside the will

on the grounds that (1) on its face it was not a valid holographic will, (2) it did not show a valid intent to make a will, and (3) that it did not show it was executed with the lawful testamentary intent, and prayed for dismissal of probate and distribution of the estate according to the laws of descent and distribution. Decedent's three brothers did not join in this contest.

At trial the court admitted extrinsic evidence in support of the will over the objection of appellant. From the decree of May 12, 1965, finding the instrument to be a valid holographic will and the last will and testament of Boyd Ruff, and dismissing appellant's petition, comes this appeal.

Appellant has prefaced her argument with the statement that it is not disputed that the words written on the instrument were in the handwriting of the decedent, nor is it disputed that the handwriting was proven in accordance with the applicable statute on proving halographic wills, and further, there is no question of competency or undue influence.

The instrument in controversy reads simply as follows:

"I Boyd Ruff request that all I own in the way of personal or real estate property to be my wife Modene.

"Boyd Ruff"

The statute on holographic wills is Ark. Stat. Ann. § 60-404 (Supp. 1965):

"Where the entire body of the will and the signature thereto shall be written in the proper handwriting of the testator, such will may be established by the evidence of at least three credible disinterested witnesses to the handwriting and signature of the testator, notwithstanding there may be no attesting witnesses to such will."

The statute on testimony to prove a will is Ark. Stat. Ann. § 62-2117 (Supp. 1965):

"A will shall be proved as follows: . . .

"b. A holographic will:

"By the testimony of at least three credible disinterested witnesses proving the handwriting and signature of the testator, and such other facts and circumstances as would be sufficient to prove a controverted issue in equity."

For reversal appellant urges that the trial court erred in admitting extrinsic evidence to prove testamentary intent.

This precise question has not been directly answered by this court in any of the multitude of cases on Arkansas holographic wills. A section in 94 C.J.S., Wills, § 203, p. 1038, however, discusses our holdings and reflects our persuasion:

"Testamentary intent is necessary to the validity of a holographic will. [*Smith* v. *Nelson*, 227 Ark. 512, 299 S. W. 2d 645; *Barnard* v. *Methodist Church of Mena*, Arkansas, 226 Ark. 144, 288 S. W. 2d 595.] No particular words are necessary to manifest the animo testandi; thus, the paper need not refer to itself as a will . . . . The fact that the holographic instrument concerns itself with matters other than the disposition of property will not nullify its effect as a will, but it may be considered in determining the intent of the writer [*Cartwright* v. *Cartwright*, 158 Ark. 278, 250 S. W. 11.] *Inquiry may be made into all relevant circumstances where the existence of testamentary intent is in doubt.*" [Emphasis ours.]

Review of our cases clearly indicates that our courts have customarily admitted extrinsic testimony to estab-

lish testamentary intent, without considering whether the statute on proof of a holographic will (§ 62-2117, *supra*) expressly permits such testimony. Perusal of *Arendt* v. *Arendt,* 80 Ark. 204, 96 S. W. 982, and *Weems* v. *Smith,* 218 Ark. 554, 237 S. W. 2d 880, and the letters therein held to be valid holographic wills, it is apparent that extrinsic testimony was necessary to fortify the finding of existence of testamentary intent. We think this is proper. As was said in *Arendt* v. *Arendt, supra*:

> "This will is in the form of a letter from William Arendt to his wife. But, to quote the language of a distinguished author, 'the law has not made requisite to the validity of a will that it should assume any particular form, or be couched in language technically appropriate to its testamentary character. It is sufficient that the instrument, however irregular in form or inartificial in expression, discloses the intention of the maker respecting the posthumous destination of his property; and if this appear to be the nature of its contents, any contrary title or designation which he may have given to it will be disregarded.' 1 Jarman on Wills (6 Ed.) 21; *Whyte* v. *Pollack,* 7 Appeal Cases, 409."

> "There are many decisions that illustrate this rule of law. The Supreme Court of California held that a writing in the following language was a will, and admitted it to probate: 'Dear Old Nance, I wish to give you my watch, two shawls and also five thousand dollars. Your old friend, E. A. Gordon.' *Clarke* v. *Ransom,* 50 Cal. 595.

> So the Supreme Court of North Carolina held the following unattested writing to be a will: 'It is my wish and desire that my good friend and relative, Dr. Joseph B. Outlaw, have all my property of every description. David Outlaw.' *Outlaw* v. *Hurdle,* 1 Jones, Law, 150. The same court in a much more recent case held that a letter from the testator to his sister, in which he said: 'If I die or get killed

in Texas, the place must belong to you and I would not want you to sell it,' was a valid will. *Alston* v. *Davis*, 118 N. C. 202.

"There are many other cases to the same effect. *Webster* v. *Lowe*, 107 Ky. 293; *Jackson* v. *Jackson*, 6 Dana, 257; *In Succession of Ehrenberg*, 21 La. Ann. 280, 99 Am. Dec. 729; *Sullivan's Estate*, 130 Pa. St. 342; *Byers* v. *Hoppe*, 61 Md. 206; *Cover* v. *Stem*, 67 Md. 449; Gardner on Wills, page 69.

"The evidence proves that William Arendt was sincerely attached to his wife, and the language of this letter to her, written under the shadow of impending death, shows, in our opinion, that it was testamentary in character and intended to direct the disposition of his property after his death, and we are of the opinion that the circuit court properly so held."

Appellant's second point urged for reversal is that the instrument, on its face, fails to show that it was testamentary in character and executed with testamentary intent. Our ruling on the first point, *i. e.*, that inquiry may be made into all relevant circumstances where the existence of testamentary intent is in doubt, disposes also of this point.

Appellant's final point is that the evidence of the circumstances surrounding the execution of the instrument is insufficient to show that the instrument was testamentary in character or that it was executed with the necessary testamentary intent. The probate court found decedent had a serious coronary condition which he knew about, and was aware that his life might be terminated on pretty short order, that the parties had been married for many years, had no children, lived together and got along well, the decedent's wife was the natural object of his bounty, and that the will was executed within a fairly short time prior to his death following another severe heart attack, and, finally, that the

instrument was the valid and last will of decedent. Review of the record reveals no testimony which fails to support these findings, and judgment of the trial court is therefore affirmed.