Sharon Kay EDMONDSTON *v.* The ESTATE of Oral W. FOUNTAIN, *Deceased*

CA 02-842                                        137 S.W.3d 415

Court of Appeals of Arkansas
Division III
Opinion delivered December 10, 2003

232

*Leroy Blankenship*, for appellant.

*Tom Thompson, Bill Walmsley*, and *Jerrie Grady*, for appellee.

ANDREE LAYTON ROAF, Judge. This case involves the trial court's denial of a petition to probate an instrument as the holographic will of Oral W. Fountain. Sharon Kay Edmondston, Mrs. Fountain's daughter, appeals. Ms. Edmondston argues that the trial court erred because the decedent clearly intended that the instrument she wrote be her last will. We agree, and reverse and remand.

The instrument at issue in this case, a copy of which is attached to this opinion as an Appendix, was written entirely by

the decedent, Mrs. Oral W. Fountain, and was signed by her and by two witnesses at her request. The instrument was prepared in January 1997. Mrs. Fountain died in April 1998, and her estate was initially probated as intestate in 1998. Mrs. Fountain was survived by five adult children, all of whom are listed in the instrument at issue in this case, with the majority of her estate going to Ms. Edmondston, who lived next door to her and continued helping her after the other children moved away. When Ms. Edmondston discovered the will in June 1999 and sought to admit it to probate, the other children filed an objection, contending that the document was not in their mother's handwriting.

At trial, numerous witnesses testified, including family members and handwriting experts. Verlin Harris, Mrs. Fountain's sister, testified that she and Mrs. Fountain spoke on the phone every night. Ms. Harris stated that in April during one of their conversations, she told her sister that she had a will. According to Ms. Harris, Mrs. Fountain responded that she too had a will. Ms. Harris testified that she explained to Mrs. Fountain the importance of writing a will and having two witnesses sign it. She also explained that a lawyer said that she could write her own will if she had two witnesses sign it. Ms. Harris testified that Mrs. Fountain again stated that she had a will.

Ricky Smithson and Justin Veach McAlister were the witnesses who signed Mrs. Fountain's will. Smithson referred to Fountain as "Granny," and testified that he had known her since he was four or five years old. He stated that when he arrived at her house, she asked him for a favor. She then went in, returned with a piece of paper, and asked the men to sign it. Smithson said he read it and it appeared to be a will, and that he thought he was signing a will. McAlister testified similarly at a deposition. He also stated that the instrument appeared to be a will and that he signed it. He identified the instrument presented during the deposition as the same document he recalled signing at Mrs. Fountain's request.

The trial court found that the will was in Oral W. Fountain's handwriting and that the signature on the instrument was Mrs. Fountain's. The court held, however, that the instrument could not be admitted to probate because it lacked testamentary intent. Specifically, the trial court found "no testamentary language whatsoever within the instrument." The court found that the instrument contained no dispositive wording and was thus defec-

tive on its face because it lacked testamentary intent. The court denied Ms. Edmondston's petition to probate, and she appeals.

On appeal, Ms. Edmondston argues that Mrs. Fountain clearly intended the instrument to be her will, and that the trial court erred in denying admission to probate because it lacked testamentary language. She contends that Mrs. Fountain's intent could not have been more clear and that testamentary language should not be the *sine qua non* when such intent is clear. In this regard, the supreme court has held that intent of the maker is the primary consideration in determining the validity of a will:

> The law has not made requisite to the validity of a will that it should assume any particular form, or be couched in language technically appropriate to its testamentary character. It is sufficient that the instrument, however, irregular in form or inartificial in expression, discloses the intention of the maker respecting the posthumous destination of his property; and, if this appears to be the nature of its contents, any contrary title or designation which he may have given to it will be disregarded.

*Chambers v. Younce*, 240 Ark. 428, 431, 399 S.W.2d 655, 657 (1966) (quoting *Arendt v. Arendt*, 80 Ark. 204, 96 S.W. 982 (1906)). Thus, no matter the form, if an instrument discloses the intent of the testator with regard to her property, then the instrument is a will. The *Chambers* court cited a number of cases in support of the proposition that a valid will may take many forms. *Chambers*, 240 Ark. at 431-32, 399 S.W.2d at 657.

Testamentary intent is necessary to the validity of a holographic will. *Chambers*, 240 Ark. at 430, 399 S.W.2d at 657. No particular words, however, are necessary. "*Inquiry may be made into all relevant circumstances where the existence of testamentary intent is in doubt.*" *Id.* (Emphasis in original). Customarily, Arkansas courts have admitted extrinsic evidence testimony to establish testamentary intent. *Id.* 240 Ark. at 430-31, 399 S.W.2d at 657.

In *Chambers*, the decedent's wife sought to probate an alleged holographic will. On the back of a blank check, the decedent wrote, "I Boyd Ruff request that all I own in the way of personal or real estate property to be my wife Modene." 240 Ark. at 429, 399 S.W.2d at 656. The check was admitted into probate, and the decedent's sister challenged the order. Noting that the

appellant did not dispute that the instrument was in the decedent's handwriting, the *Chambers* court held that the blank check was properly admitted as a holographic will. Concluding that there was testamentary intent, the court stated that there was evidence that the decedent was sincerely attached to his wife. Further, the language of the note, written under impending death, was testamentary in character.

Here, however, the validity of Mrs. Fountain's will turns on the narrower issue of whether words of a testamentary nature are absolutely required by our case law for the instrument to be admitted to probate. Ms. Edmondston argues that they are not, while the appellee contends that the trial court was correct in finding that they are required. In its order, the trial court relied primarily on two cases in finding that testamentary language is required, *Dunn v. Means*, 304 Ark. 473, 803 S.W.2d 542 (1991) and *In the Matter of Estate of O'Donnell*, 304 Ark. 460, 803 S.W.2d 530 (1991). Ms. Edmondston argues that these authorities are distinguishable factually from her case and do not compel the court to place words or "verbs" of a dispositive nature above the clear intent of the decedent as evidenced by the instrument itself and the admitted extrinsic evidence. We agree.

In *Dunn v. Means, supra,* the appellant sought to probate her mother's holographic will as the will of Claude Rogers, an unmarried man who lived with appellant's mother. The will had the following notation appended beneath her mother's signature: "Judee Dunn — Claude & I give you full power to do & take care of all our Business & do as you wish with, with it, with no problems from anyone. You can sell or dispose of all property & monies." 304 Ark. at 474, 803 S.W. at 542. Appellant's mother, Mr. Rogers, and two witnesses signed this notation. The supreme court affirmed the denial of probate, stating:

> Further, where a document sets forth no words of a dispositive nature, it is defective on its face because it lacks the required intent to make a will, and extrinsic evidence is not admissible to prove the necessary intent.
>
> In this case, we find no testamentary intent whatsoever within the passage that Ms. Dunn claims to be the will of Mr. Rogers. Certainly, it cannot be said that this instrument's expressions are so

> clearly stated that, without inference, no mistake can be made as to the existence of testamentary intention.

*Dunn*, 304 Ark. at 475-76, 803 S.W.2d at 543. In *Dunn*, the court clearly found that the wording *used* did not evidence testamentary intent, not that such words were completely *absent*, as there were two complete sentences purporting to address the disposition of Rogers' estate. In the case relied on by the *Dunn* court, *McDonald v. Petty*, 262 Ark. 517, 518, 559 S.W.2d 1, 1 (1977), the supreme court did state that "since the document sets forth no words of a dispositive nature, it was defective on its face because it lacked the required animus testandi or intent to make a will," and that extrinsic evidence was thereafter not admissible to prove intent. However, the court described the instrument in question, although signed and dated, as "merely a sketch or drawing on the back of a used envelope with names in individual squares," and stated that there was "absolutely nothing indicating an intent that this instrument serve as a testamentary disposition" of the property. *Id.* at 519, 559 S.W.2d at 2. Here, the carefully written instrument prepared by Mrs. Fountain, and captioned "Last Will," obviously bears no resemblance to such a drawing, and there is evidence of her intent by the caption she used.

■ The second case primarily relied upon by the trial court, *Estate of O'Donnell*, 304 Ark. 460, 803 S.W.2d 530 (1991), while closer factually to the case before us, is likewise distinguishable. *O'Donnell* also involved a handwritten listing of names and items of property without dispositive language, that was signed, dated and bore the words "Last Will & Testament." 304 Ark. at 463, 803 S.W.2d at 531. However, it was not witnessed and the decedent had given the list to his lawyer to prepare a will, but died before executing the typewritten instrument prepared by the lawyer. The trial court set forth the following factors in denying the instrument's admission to probate:

*Factors Favoring Holographic Instrument as Will*

1) Montgomery told decedent what to do, and he hands it to Montgomery saying, "Here it is."

2) Decedent's habit as acting in cursory and abbreviated way.

3) Instrument signed and dated.

4) Instrument has "Last Will and Testament."

5) Decedent never told wife he had a 1979 will.

6) Decedent never told wife he revoked 1979 will.

7) Decedent never told wife home just in his name.

*Factors Indicating Holographic Instrument Not a Will*

1) So brief, perfunctory, truncated and cursory as to be meaningless.

2) Written part in pen, part in pencil—seems to be on scratch paper.

3) Strikeovers.

4) No real urgency or hurry in getting a willBnot sick.

5) All property not disposed of.

6) Shelton said Montgomery called it a list, until some 10 days later.

7) Decedent knew Montgomery going to make a written will.

8) Decedent showed typewritten will to his wife, but did not tell her he had a handwritten will.

9) Discussed with wife in detail the provisions of typewritten will.

10) *Has no words of a dispositive nature.*

11) Wife's name not mentioned.

*Id.*, 803 S.W.2d at 531-32. (Emphasis added.) The trial court further stated that the "court's mind must be settled as to the writer's testamentary intent," and that "[t]he document itself, along with all the attending circumstances, must overcome all doubt about testamentary intent." *Id.* at 464, 803 S.W.2d at 532. The supreme court agreed with the reasoning of the probate judge, found that it was within the framework of the applicable law, and recited the factors listed by the trial court in affirming the denial of admission to probate.

In this regard, the trial court clearly considered much extrinsic evidence in reaching its decision, and the lack of words of a testamentary or dispositive nature was merely one of eleven adverse factors recited. This case does not stand for the proposition that the lack of such language, standing alone, will be fatal to a holographic will on the issue of testamentary intent. Accordingly, we agree that these authorities do not constitute a basis for denial of the admission to probate of Mrs. Fountain's will, or for the exclusion of extrinsic evidence of her intent, and reverse and remand with directions to admit the will to probate.

Reversed and remanded.

NEAL, J., agrees.

STROUD, C.J., concurs.

## APPENDIX

### Exhibit 1

_Last Will    Jan. 1 1997_

Kay Edmonston
160 acre farm & contents remaing
37 head of, cattle at this time
1972 truck
Wayne Fountain
    Cattle on Wayne's Farm
    + Fiddle
Shirley Washington
    200.00
E.W. Fountain
    200.00
Nell Harris
    200.00

Orol W. Fountain

Witness

82