Cite as 2019 Ark. App. 496

# ARKANSAS COURT OF APPEALS

DIVISION IV

No. CV-18-989

| | |
|---|---|
| JULIA BAZAZZADEGAN; CANNON HOLDINGS, LLC; OZARK MOUNTAIN PUBLISHING, INC.; AND QUANTUM HEALING HYPNOSIS ACADEMY, LLC<br><br>APPELLANTS<br><br>V.<br><br>NANCY VERNON, INDIVIDUALLY AND AS COTRUSTEE OF THE DOLORES E. CANNON LIVING TRUST AND ON BEHALF OF CANNON HOLDINGS, LLC<br><br>APPELLEES | **Opinion Delivered** October 30, 2019<br><br>APPEAL FROM THE MADISON COUNTY CIRCUIT COURT<br>[NO. 44CV-18-129]<br><br>HONORABLE DOUG MARTIN, JUDGE<br><br>REVERSED AND VACATED; REMANDED WITH INSTRUCTIONS |

## BRANDON J. HARRISON, Judge

In 2018, Nancy Vernon, a successor cotrustee and beneficiary of the Dolores E. Cannon Living Trust, sued her sister Julia Bazazzadegan, who is also a successor cotrustee and a beneficiary of the trust. Nancy alleged that Julia (1) committed a breach of trust as cotrustee, (2) breached her fiduciary duties as a corporate officer, and (3) misappropriated funds and unjustly enriched herself so that Nancy was entitled to a constructive trust.[1] Julia moved the circuit court to order the dispute to mediation or arbitration, arguing that the

---

[1]The Cannon Trust owns several companies that are included in this lawsuit— Cannon Holdings, LLC; Ozark Mountain Publishing, Inc.; and Quantum Healing Hypnosis Academy, LLC. The lawsuit involves various disputes between Julia and Nancy over management of these companies. This appeal does not require us to address those disagreements.

settlor (the sisters' mother) intended that course. This interlocutory appeal, which we review de novo and presents an issue of first impression, asks whether the circuit court erred when it denied Julia's motion to compel mediation or arbitration. Ark. R. App. P.–Civ. 2(a)(12) (2019); *Gibbons v. Anderson*, 2019 Ark. App. 193, 575 S.W.3d 144.

I. *The Trust's Alternative-Dispute-Resolution Provisions*

The Dolores E. Cannon Living Trust was created on 4 April 2014, and Dolores Cannon was the settlor and sole trustee before she died. When Dolores died her daughters Nancy Vernon and Julia Bazazzadegan became successor cotrustees pursuant to section 3.03 of the trust. Each daughter accepted the role. The trust contains three provisions that discuss alternative–dispute resolution (ADR). They are the focus of this appeal.

- *Article Twelve* outlines the trustees' powers. In particular, Section 12.24 states,

  My Trustee may settle any claims and demands in favor of or against the trust by compromise, adjustment, arbitration or other means. My Trustee may release or abandon any claim in favor of the trust.

- *Article Eleven* governs trust administration. In particular, Section 11.04 states,

  Section 11.04 No Court Proceeding

  My Trustee shall administer this trust with efficiency, with attention to the provisions of this trust, and with freedom from judicial intervention. If my Trustee or another interested party institutes a legal proceeding, the court will acquire jurisdiction only to the extent necessary for that proceeding. Any proceeding to seek instructions or a court determination may only be initiated in the court with original jurisdiction over matters relating to the construction and administration of trusts. Seeking instructions or a court determination is not to be construed as subjecting this trust to the court's continuing jurisdiction.

  I request that any questions or disputes that arise during the administration of this trust be resolved by mediation and, if necessary, arbitration in accordance with the Uniform Arbitration Act. Each interested party involved in the dispute, including any Trustee involved, may select an arbiter and, if necessary to establish

2

a majority decision, these arbiters may select an additional arbiter.  The decision of a majority of the arbiters selected will control with respect to the matter.

The third section of the trust that directly relates to the ADR issue is Section 11.14.  It provides that cotrustees must agree unanimously on an action unless the trust provides otherwise.  Absent unanimous agreement between cotrustees, the settlor expressly "request[ed] that the matter be settled by mediation and then by arbitration, if necessary[.]"  Note that Sections 11.14 and 11.04 impose an order of preference regarding two identified dispute-resolution methods—mediation first, arbitration second.

> If my Trustees are unable to agree on a matter for which they have joint powers, *I request that the matter be settled by mediation and then by arbitration*, if necessary, in accordance with the Uniform Arbitration Act.  Each of my Trustees may select an arbiter and these arbiters may select an additional arbiter, if necessary, to establish a majority decision.  The decision of a majority of the arbiters will control with respect to the matter.

(Emphasis added.)

## II.  *To Litigate or Not to Litigate?—That is the Question*

Julia wants this lawsuit sent to mediation or arbitration because it falls within Section 11.04's term that "any questions or disputes that arise during the administration of this trust" must be "resolved by mediation and, if necessary, arbitration in accordance with the Uniform Arbitration Act."  She therefore asks that we reverse the circuit court's decision to deny her motion to compel mediation or arbitration and remand with instructions to either dismiss or stay the suit while the parties mediate or, if necessary, arbitrate.  Her reasons include some public-policy arguments favoring these ADR options.

Nancy holds the opposite position:  the lawsuit in circuit court should not be mediated or arbitrated because the plain language of Section 11.04 permits a trustee to file

a traditional lawsuit or pursue the mediation or arbitration route. Section 11.04 anticipates—if not authorizes—litigation, so the circuit court's denial of Julia's motion was not reversible error. Nancy contends that the general legal principles favoring an ADR option do not defeat Arkansas's settled position that a party cannot be compelled to arbitrate or mediate when he or she has not agreed to do so. Nancy says the Arkansas Supreme Court specifically addressed this issue in *Asset Acceptance, LLC v. Newby*, 2014 Ark. 280, 437 S.W.3d 119, and refused to compel arbitration because one of the legal elements of an enforceable contract (mutual assent) was missing.

Julia is correct that Arkansas's public policy favors enforcing ADR clauses. *See* David Newbern, John J. Watkins & D.P. Marshall Jr., 2 *Arkansas Civil Practice & Procedure* § 14:14 (5th ed. May 2019 update) ("As a matter of public policy, Arkansas strongly favors arbitration as a less expensive and more expeditious alternative to litigation and a useful mechanism for relieving congested court dockets.") (collecting cases); Robert B. Moberly & Judith Kilpatrick, *Introduction: The Arkansas Law Review Symposium on Alternative Dispute Resolution*, 54 Ark. L. Rev. 161, 167 (2001) ("Some disputes require technical expertise for their resolution and, because judges are necessarily generalists, the courts may be less appropriate for some controversies."). The Arkansas Uniform Trust Code does not, however, directly address whether an ADR provision in a trust is enforceable in this case's context. The Trust Code clearly permits parties to arbitrate claims. In fact, it arguably encourages them to do so unless there is an express provision to the contrary. *See* Ark. Code Ann. § 28-73-111 (Repl. 2012) (allowing binding nonjudicial settlement agreement for any matter involving a trust); Ark. Code Ann. § 28-73-816(23) (trustee has power to

4

resolve dispute over trust administration "by mediation, arbitration, or other procedure for alternative-dispute resolution"); Ark. Code Ann. §§ 28-73-815, -816(23) & -105 (Repl. 2012) (Trust Code is a set of default terms that may apply in the absence of express trust term). That the Cannon Trust's express terms give cotrustees Nancy and Julia the power to settle any disputes or claims by mediation or arbitration is consistent with the default provisions in the Trust Code. *Compare* Section 12.24 *with* Ark. Code Ann. § 28-73-816(23). The issue is whether the cotrustees and beneficiaries *must* mediate or arbitrate their dispute.

A. Mandatory or Permissive?

Trusts are written legal instruments that we construe using the same legal principles that apply when resolving disputes over contracts or wills, for example. *See Murphy v. Morris*, 200 Ark. 932, 141 S.W.2d 518 (1940); *Gibbons v. Anderson*, 2019 Ark. App. 193, 575 S.W.3d 144. The primary objective is to carry out the settlor's intent unless doing so is contrary to the law for some reason. *Covenant Presbytery v. First Baptist Church*, 2016 Ark. 138, 489 S.W.3d 153. If a trust expressly states the settlor's intentions, then we stop and carry them out. Canons of construction are appropriately applied only when the document is reasonably susceptible to more than one interpretation. When determining the settlor's intentions, we consider every part of the trust. *Id*. A results-oriented, cherry-picking approach, in other words, is a bad thing.

With these governing legal principles in hand, we turn to whether the Cannon Trust dispute *must* be sent to some ADR option. To put the bottom-line up front, we hold that the settlor of the Cannon Trust expressly intended that courts exercise a limited role when resolving trust disputes. The first paragraph in Section 11.04 does not answer whether the

5

trust mandates, or merely suggests, an ADR approach. Recall that Section 11.04 states: "If my Trustee or another interested party institutes a legal proceeding, the court will acquire jurisdiction only to the extent necessary for that proceeding." This assertion in some sense merely reflects a fact of jurisdictional law in Arkansas. Circuit courts have jurisdiction over trust disputes. Ark. Const. amend. 80, § 6(A) (establishing circuit courts "as the trial courts of original jurisdiction of all justiciable matters not otherwise assigned pursuant to this Constitution"). But the first paragraph in Section 11.04 is also wholly consistent with the role that circuit courts have under Arkansas's Arbitration Act. *See* Ark. Code Ann. § 16-108-211 (the circuit court may appoint arbitrators); Ark. Code Ann. § 16-108-207 (circuit court may issue orders compelling or staying arbitration); Ark. Code Ann. §§ 16-108-223 & -224 (circuit courts have a limited role when reviewing, modifying, or vacating an arbiter's decision).

The recital "[i]f my Trustee or another interested party institutes a legal proceeding, the court will acquire jurisdiction only to the extent necessary for that proceeding" is marginally helpful. But paragraph 2 in Section 11.04 provides more guidance. There the settlor expressly stated: "I request that any questions or disputes that arise during the administration of this trust be resolved by mediation and, if necessary, arbitration in accordance with the Uniform Arbitration Act."[2] *I Request.* These are key words when

---

[2]The trust refers to the Uniform Arbitration Act in Sections 11.04 and 11.14. There are substantive differences between the Uniform Act and the Arkansas version of the Revised Uniform Arbitration Act. *See* Katherine B. Church, Comment, *Arkansas and Mandatory Arbitration: Is the Feeling Really Mutual?*, 65 Ark. L. Rev. 343 (2012) (discussing the 2011 changes and Arkansas resistance to unlimited arbitration).

deciding whether the trust's ADR language was intended to be mandatory versus permissive.

Our supreme court has said that the decision between mandatory and precatory words in wills and trust instruments "could make a treatise in itself." *Patterson v. Polk*, 229 Ark. 272, 282, 317 S.W.2d 286, 292 (1958). That said, in trusts, directions are held to be mandatory when such words direct, command, or require something to be done; directions are precatory when they merely express a hope or wish and leave it to the trustee or the occurrence of some fortuitous circumstance as to whether the desires will be accomplished. *Id.* In this case there is no need to wring judicial hands over whether the settlor's request is mandatory or permissive (suggestive, precatory, wishful, pick your synonym). The supreme court has held that the words "I request" are more directive than wishful. In *Faith v. Singleton*, our supreme court stated the following,

> We have specifically found that the words "I request" can be testamentary language intended to direct disposition of the testator's property. In *Chambers v. Younes*, 240 Ark. 428, 399 S.W.2d 655 (1966), we approved the testator writing, "I Boyd Ruff request that all I own in the way of personal or real estate property to be my wife Modene." In *Arendt v. Arendt* [80 Ark. 204, 96 S.W. 982 (1906)], the testator's letter to his wife included this language: "Whatever I have in worldly goods, it is my wish that you should possess them." We found that to be a valid testamentary disposition. In construing words which are claimed to be merely precatory, it is necessary to give effect to the testator's intent. *Gregory v. Welch*, 90 Ark. 152, 118 S.W. 404 (1909). In this case the intention is clear and the word "request" reflects Tennie Joyner's direction as to how to dispose of her property. We hold that the words used by Tennie Joyner ["I, the undersigned, do hereby request, at the time of my death, that Calvin Britton, Route 5, Searcy, Arkansas, who has lived and care for me for years, have my home and all the furnishings as long as he wants, or as long as he shall live"] made a valid testamentary disposition of her property.

286 Ark. 403, 404–05, 692 S.W.2d 239, 241–43 (1985).

7

Using *Singleton* as our guide, we hold that the Dolores E. Cannon trust mandates mediation and, if necessary, arbitration regarding all disputes arising from the trust. This holding is consistent with the trust's terms, Arkansas law more generally, and *Singleton*'s position that "I request" can be a directive when disposing of property using a written instrument.

## B. Is the ADR Provision Enforceable?

Having decided that the Cannon Trust contains a mandatory ADR provision, the next question is whether Julia can enforce the ADR provision; the two points are not one and the same. As we said earlier, Nancy argues that the trust's ADR provision is unenforceable because there is no valid contractual agreement between the cotrustees to mediate or arbitrate a dispute between them. Julia contends that Nancy is estopped from claiming the trust's ADR provision is unenforceable because she is attempting to enforce rights in the lawsuit that she would not have but for the trust. In other words, Nancy cannot have it both ways. On the one hand, she claims that she is not bound by the trust's ADR provision; on the other hand, Nancy seeks to assert remedial rights under the trust (like recover a sum certain based on an accounting). This whole line of argument arises because Dolores Cannon was the only person who signed the trust, rendering Nancy and Julia nonsignatories.

Nancy is generally correct that an agreement lacking the elements of a valid contract cannot be submitted to arbitration. *Pine Hills Health & Rehab., LLC v. Matthews*, 2014 Ark. 109, 431 S.W.3d 910 (noting that a lack of mutual assent rendered arbitration provision related to nursing-home care unenforceable). Nancy is right again when she points out that

8

the Arkansas Supreme Court holds a decidedly minority view that an arbitration agreement is enforceable only if it binds all parties, otherwise it lacks mutuality of obligation. *Showmethemoney Check Cashers, Inc. v. Williams*, 342 Ark. 112, 27 S.W.3d 361 (2000). "Today, virtually all courts hold that the doctrine of mutuality of obligation does not preclude enforcement of nonmutual arbitration clause. . . . The principal exception is the Supreme Court of Arkansas." Christopher R. Drahozal, *Nonmutual Agreements to Arbitrate*, 27 J. Corp. L. 537, 544–45 (2002).

Arkansas law presumes that parties contract only for themselves. Consequently, a contract will not be construed as having been made for the benefit of a third party unless the parties clearly so intended. *Bigge Crane & Rigging Co. v. Entergy Ark., Inc.*, 2015 Ark. 58, at 10, 457 S.W.3d 265, 271–72. The third-party-beneficiary doctrine allows a beneficiary of a contract, even when the agreement does not expressly designate it as a party, to maintain an enforcement action. *Id.* Arkansas's appellate courts have occasionally applied a third-party-beneficiary theory in arbitration cases. *See, e.g.*, *Hickory Heights Health & Rehab, LLC v. Cook*, 2018 Ark. App. 409, at 6, 557 S.W.3d 286, 290 (discussing third-party beneficiaries and deciding arbitration clause was unenforceable). *But see Searcy Healthcare Ctr., LLC v. Murphy*, 2013 Ark. 463 (holding that wrongful-death beneficiaries are bound by arbitration agreement with nursing home because beneficiaries' rights were derivative of the decedent's rights).

But a trust is not a contract. One obvious reason is that there is no meeting of minds. *Gibbons v. Anderson*, 2019 Ark. App. 193, at 9, 575 S.W.3d 144, 149. One legally competent mind suffices to establish a trust.

9

No Arkansas appellate court has decided whether an arbitration provision contained in a trust is enforceable when the trust's validity is not at issue.[3] *Gibbons*, 2019 Ark. App. 193, at 12 n.4, 575 S.W.3d at 150 n.4. Other states have held that trust beneficiaries are bound by arbitration agreements that a trustee signed even though the beneficiaries did not sign the agreement. The basic rationale is that because the beneficiary sought to enforce the trust or benefit from it, he or she is bound by its terms. *See Harvey ex rel. Gladden v. Cumberland Tr. & Inv. Co.*, 532 S.W.3d 243, 270 (Tenn. 2017) (a beneficiary who seeks the benefit of a trust must also bear its burdens, including arbitration). *But see Snead v. Wright*, No. 3:19-CV-00092 JWS, 2019 WL 3412906, at *3 (D. Alaska July 28, 2019) (denying motion to compel arbitration of a trust claim and noting lack of uniformity across state law on the issue).

The Texas Supreme Court, for example, has approved enforcement of an arbitration provision in a trust agreement when a beneficiary sued a misbehaving trustee. *Rachal v. Reitz*, 403 S.W.3d 840, 844 (Tex. 2013) (beneficiary's lawsuit alleging that the trustee misappropriated funds and failed to give an accounting was subject to the settlor's directive that "any dispute of any kind involving [the] trust" must be arbitrated). Many state courts across this country have adopted some version of equitable estoppel to compel arbitration by or against a person who did not sign the governing document. Michael A. Rosenhouse,

_____

[3]States like Florida and Arizona, but not Arkansas, have enacted laws based on a model act, stating "[a] provision of a will or trust requiring the arbitration of dispute, other than disputes of the validity of all or part of a will or trust, between or among the beneficiaries and a fiduciary . . . is enforceable." *Gibbons*, 2019 Ark. App. 193, at 11, 575 S.W.3d at 149.

Annotation, *Application of Equitable Estoppel to Compel Arbitration By or Against Nonsignatory—State Cases*, 22 A.L.R. 6th 387 (2019) (collecting cases).

Having studied the question in light of the parties' briefs, the trust, and the available caselaw and statutes, we hold that Section 11.04's ADR provision in the Cannon Trust is enforceable. Julia is therefore entitled to enforce Section 11.04's ADR directive against Nancy's pending trust claims in circuit court. Nancy and Julia are not "parties" to the trust agreement in the traditional contract-law sense of the term. But again, the Cannon Trust is not a contract. It is a legal instrument through which the settlor Dolores Cannon expressly communicated how trust property was to be managed and administered. We are duty bound to honor her written words.

Nancy and Julia were both named successor cotrustees and each is a named beneficiary of the trust. They agreed to the trust terms by acting as cotrustees in the years since their mother's death. Ms. Cannon intended the trust to benefit her children and intended that her children resolve their disputes using mediation or arbitration, as necessary. As successor cotrustees and cobeneficiaries, Nancy and Julia are bound by all terms in the trust. So Nancy individually, and as a fiduciary, is bound to resolve her grievances using an ADR process.

### III. *Conclusion*

The circuit court's order denying Julia's motion to compel arbitration is reversed and vacated. The case is remanded to the circuit court for further proceedings consistent with this opinion. On remand, the circuit court is instructed to order mediation. If mediation

11

is unsuccessful, then the court must determine which of the plaintiffs' claims are subject to the trust's arbitration provision and then compel the parties to arbitrate those claims.

Reversed and vacated; remanded with instructions.

KLAPPENBACH and SWITZER, JJ., agree.

*James, House, Downing & Lueken, P.A.*, by: *Matthew R. House*, for appellants.

*Conner & Winters, LLP*, by: *G. Alan Wooten* and *Michael D. Sutton*, for appellees.