Mary Ada Joyner FAITH, et al. *v.* Ira W. SINGLETON, et al.

85-66                                   692 S.W.2d 239

Supreme Court of Arkansas
Opinion delivered July 8, 1985

*Pollard & Cavaneau*, by: *Odell Pollard*, for appellant.

*Lightle, Beebe, Raney & Bell*, for appellee.

DARRELL HICKMAN, Justice. The trial court refused to admit to probate an instrument signed by Tennie Joyner and duly witnessed, because Mrs. Joyner had said several days before that she did not want a will but merely a piece of paper which, upon her death, would allow Calvin Britton to live in her home and use her furnishings as long as he lived. The trial judge ruled that there was no intent to make a will. We reverse the judgment.

Mrs. Joyner, who was 80 and faced hospitalization the following week, went to the home of her neighbor, Jeff Permenter, on Sunday, November 14, 1976, and told him "that she wanted a paper drawed up so Calvin would have a place to stay as long as he lived." Permenter called his stepdaughter, Reba Cook, and Pat Shourd to be witnesses. Mrs. Shourd was to type the document and she asked Mrs. Joyner what she wanted. Mrs. Joyner said, "I want a piece of paper fixed up so I can sign it and Calvin will have a place to live." Mrs. Shourd asked her if she wanted a will and Mrs. Joyner said she did not. Mrs. Joyner told Mrs. Shourd that she was concerned about Calvin having a home if she died while in the hospital. Mrs. Joyner also told Mrs. Shourd other provisions she wanted in the document.

On Friday, November 19, they all met again. Mrs. Shourd testified that she read the document which she had typed to Mrs. Joyner and that Mrs. Joyner "said okay or something along that line." Jeff Permenter and Reba Cook witnessed the document. All parties signed in each other's presence. On that day no mention was made of whether the document was a will. This is the document.

State of Arkansas
County of White

I, the undersigned, do hereby request, at the time of my death, that Calvin Britton, Route 5, Searcy, Arkansas, who has lived and care for me for years, have my home and all the furnishings as

long as he wants, or as long as he shall live. I further request that only one other person reside in the home with him, not an entire family. Then, at Calvin Britton's death, the home, property and furnishings can be sold and all proceeds from the property is to go to my brothers and sisters and Thomas Joyner's (Deceased) brothers and sisters in equal parts.

Appeared before me this 19th day of November, 1976 Jeff Permenter and Reba Cook, and signed this document.

/s/ Pat Shourd          My commission expires 9/16/77
Notary Public

Witness                                             Signed,
Jeff Permenter                            Tennie E. Joyner
Reba Cook                                         11-19-76

Mrs. Joyner died on December 9, 1983. The First National Bank of Searcy was appointed administrator. When the document was discovered, the bank offered it to the court to determine its nature. Tennie Joyner's late husband's legal heirs were the proponents of the will. Tennie Joyner's heirs opposed it.

██ Whether the instrument is in fact a will is the question before us. A will is a disposition of property to take effect upon the death of the maker of the instrument. See *Clark* v. *Rutherford*, 227 Ark. 270, 298 S.W.2d 327 (1957). To be valid as a will an instrument must be executed with testamentary intent, or *animus testandi. Smith* v. *Nelson*, 227 Ark. 512, 299 S.W.2d 645 (1957). That merely means the intention to dispose of one's property upon one's death. By looking to the four corners of the instrument, we determine that intent. *McDonald* v. *Petty*, 262 Ark. 517, 559 S.W.2d 1 (1977). It is a question of law for the court to determine from the face of the instrument whether the writer intends to make a testamentary disposition. *McDonald* v. *Petty, supra; Stark* v. *Stark*, 201 Ark. 133, 143 S.W.2d 875 (1940).

██ No doubt Mrs. Joyner intended to dispose of her property on her death, and the instrument clearly sets out what she wanted done. That is enough to qualify it as a will, so far as intent is required. Although Mrs. Joyner said, for whatever

reason, that she did not want a will, a will is precisely what she dictated and executed. As Justice Oliver Wendell Holmes stated: "We must think things not words. . . ." Oliver Wendell Holmes, "Law in Science and Science in Law," *Collected Legal Papers*, p. 238 (1921). "If what the testator does sign proves to be what the law declares is a testament, and witnesses duly attest it, they have attested a will, though neither the testator nor the witnesses knew that the law declared the writing to be a will." *In re Bybee's Estate*, 179 Ia. 1089, 160 N.W. 900 1917). A person may act *animo testandi* without knowing that he is making a will, and it is immaterial what kind of instrument he thinks he is making, if only he manifests a clear intent to dispose of his property after his demise and observes the statutory formalities. *Merrill* v. *Boal*, 46 R.I. 274, 132 A. 721 (1926). See also *Arendt* v. *Arendt*, 80 Ark. 204, 96 S.W. 982 (1906).

■■ The appellees also argue that other reasons should prohibit probate. First, it is contended that the formalities of execution were not followed because Tennie Joyner did not declare the instrument to be her will. Ark. Stat. Ann. § 60-403 a (Repl. 1971) provides in pertinent part: "The testator shall declare to the attesting witnesses that the instrument is his will. . ." The requirement that the testator declare the instrument to be a will is called publication. In *Rogers* v. *Diamond*, 13 Ark. 474, 8 Eng. 474 (1853), publication was defined:

> Publication under the statute is necessary to give effect to a will; but it means that the testator, having capacity to make a will, shall understand that the instrument which he is about to execute, is a testamentary disposition of his property, and that he shall, at the time, communicate to the witnesses, that he does so understand it. The statute says he shall *declare* it; but in *Remson* vs. *Brinkerhoff*, Nelson, C.J., said that no particular form of words is necessary, and that it would be unwise, if not unsafe, to speculate upon the precise mode of communication, as every case must depend upon its own peculiar circumstances. The fact of publication therefore, is to be inferred or not, from all the circumstances attending the execution of the will; all that is said and done as part of the *res gestae.*

It is not required that a testator recite precisely the words

"this is my will," although that is obviously the preferred practice. Publication can be inferred from acts and circumstances. *Walpole* v. *Lewis*, 254 Ark. 89, 492 S.W.2d 410 (1973); *Rogers* v. *Diamond, supra.*

■ The appellees wish to void Mrs. Joyner's last requests by asking us to strictly construe the technical requirements of Ark. Stat. Ann. § 60-403. Where there is no indication of fraud, deception, undue influence, or imposition, this court avoids strict technical construction of statutory requirements in order to give effect to the testator's wishes. *Walpole* v. *Lewis, supra; In re Altheimer's Estate*, 221 Ark. 941, 256 S.W.2d 719 (1953). We seek to determine the intent of the testator. *Morgan* v. *Green*, 263 Ark. 125, 562 S.W.2d 612 (1978). It is not disputed that Tennie Joyner understood that she was making a testamentary disposition of her property nor is it disputed that that was communicated to the witnesses and they understood. Tennie Joyner's intentions and desires were clear.

■ The appellees also contend, as they did at trial, that the language used by Tennie Joyner was merely precatory, expressing her desire or hope rather than a command to dispose of her property as required in a will. We reject this argument for the same reason the trial judge did. We have specifically found that the words "I request" can be testamentary language intended to direct disposition of the testator's property. In *Chambers* v. *Younes*, 240 Ark. 428, 399 S.W.2d 655 (1966), we approved the testator writing, "I Boyd Ruff request that all I own in the way of personal or real estate property to be my wife Modene." In *Arendt* v. *Arendt, supra*, the testator's letter to his wife included this language: "Whatever I have in worldly goods, it is my wish that you should possess them." We found that to be a valid testamentary disposition. In construing words which are claimed to be merely precatory, it is necessary to give effect to the testator's intent. *Gregory* v. *Welch*, 90 Ark. 152, 118 S.W. 404 (1909). In this case the intention is clear and the word "request" reflects Tennie Joyner's direction as to how to dispose of her property. We hold that the words used by Tennie Joyner made a valid testamentary disposition of her property.

Reversed and remanded.