Avanell LOONEY *v.* ESTATE of Edna WADE, Deceased

92-518                                    839 S.W.2d 531

Supreme Court of Arkansas
Opinion delivered November 2, 1992

*Honey & Honey, P.A.*, by: *Charles L. Honey*, for appellant.

*Wynne & Wynne*, by: *Robin F. Wynne*, for appellee.

JACK HOLT, JR., Chief Justice. The issue in this appeal is whether the Ouachita County Probate Court erred in denying the probate of the second will of Edna Wade because its proponent, Avanell Looney, the writer of the will and recipient of its proceeds, had failed to overcome the rebuttable presumption that Ms. Wade lacked the requisite mental capacity and that undue influence was brought to bear on her. We affirm the probate court.

Edna Wade died at the age of 81 at the Sparkman Residential Care Center on November 3, 1990. She had executed her first known will on July 20, 1985, leaving her estate to a "good friend" Dorothy Wilkins, or, in case Ms. Wilkins predeceased her, to another friend, Sue Warnix. At that time, Ms. Wade lived alone in a small house trailer and had no living close family. The will was signed by Edna Wade and witnesses by Dr. Charles H. Fohn and Pat Chandler, R.N., who attested to the will and signed a proof of will on that same date. Ms. Wilkins helped Ms. Wade by cleaning her house, taking her to buy groceries, and caring for her general welfare.

On June 10, 1987, Ms. Wade entered the Sparkman Residential Care Center as a permanent resident. Two days later, a second will was signed by Ms. Wade. This will was in the handwriting of Avanell Looney, the sole beneficiary of Ms. Wade's estate and the owner and administrator of the Sparkman Residential Care Center. The attesting witnesses to the second will were Kathy Kee, Tressie Reid, and Ruth Goodgame. Kathy Kee is Avanell Looney's daughter and Tressie Reid is Avanell Looney's mother. Ruth Goodgame is a distant relative of Ms. Wade and her roommate at the center. Ms. Wade paid Ms. Looney $650.00 per month to reside at the facility.

On February 6, 1991, the Ouachita County Probate Court entered an order admitting the first will to probate and appointing Dorothy Wilkins as personal representative. Letters testamentary and notice of probate were filed two days later. On March 7, 1991, Avanell Looney filed a contest of the first will on the

grounds that it was revoked by the second will.

After trial, the probate court found that (1) the first will was "duly executed as provided by law," (2) the second will was a handwritten document written out by the sole beneficiary, Avanell Looney, and witnessed by the mother and daughter of the sole beneficiary, (3) Ms. Goodgame, the third witness, was unable to positively testify as to signing the will, and (4) these facts gave rise to the rebuttable presumption that there was undue influence on the part of Ms. Looney. The probate court further found that Ms. Looney had the burden of proving beyond a reasonable doubt that the testatrix had both mental capacity and freedom of will to execute a valid will at the time it was signed and that she failed to meet this burden of proof. Thus, probate of the second will was denied and the petition dismissed. It is from that dismissal that this appeal arises.

▉ Probate cases are reviewed de novo on appeal, and this court will not reverse unless the findings of the probate judge are clearly erroneous. *Daley* v. *Boroughs*, 310 Ark. 274, 835 S.W.2d 858 (1992); *Baerlocker* v. *Highsmith*, 292 Ark. 373, 730 S.W.2d 237 (1987). Due deference will be given to the superior position of the probate judge to determine the credibility of the witnesses and the weight to be accorded their testimony. *Daley* v. *Boroughs*, *supra*.

▉▉ In a typical will contest, the party contesting the validity of the will has the burden of proving by a a preponderance of the evidence that the testator lacked mental capacity at the time the will was executed or that the testator acted under undue influence. *In re Davidson*, 310 Ark. 639, 839 S.W.2d 214 (1992); *In re Kueteman*, 309 Ark. 546, 832 S.W.2d 234 (1992); *Baerlocker* v. *Highsmith*, *supra*; *Rose* v. *Dunn*, 284 Ark. 42, 679 S.W.2d 180 (1984). However, where as here, a beneficiary under the will actually *drafts* or *procures* the will, a higher burden of proof is applied under Arkansas law:

> In *Greenwood* v. *Wilson*, 267 Ark. 68, 588 S.W.2d 701 (1979), we held that the proponent of a will who is a beneficiary and who drafted the will or caused it to be drafted has the burden to prove *beyond a reasonable doubt* that it was not the result of undue influence and that the testator had the mental capacity to make the will. We

again held in *Smith* v. *Welch*, 268 Ark. 510, 597 S.W.2d 593 (1980), that where a beneficiary procures the making of a will, "it is incumbent upon those who, in such a case, seek to establish the will, to show *beyond reasonable doubt*, that the testator had both such mental capacity, and such freedom of will and actions as are requisite to render a will legally valid."

*Park* v. *George*, 282 Ark. 155, 159, 667 S.W.2d 644, 647 (1984) (emphasis added). *See also Short* v. *Stephenson*, 238 Ark. 1048, 386 S.W.2d 501 (1965). In other words, it was incumbent on Ms. Looney to rebut a presumption of undue influence and lack of mental capacity by proving beyond a reasonable doubt that there was no undue influence and that Ms. Wade had testamentary capacity. Ark. R. Evid. 301(a); *Park* v. *George*, 282 Ark. at 160, 667 S.W.2d at 647.

■ Without reciting in detail all of the testimony, we conclude that the probate judge did not err in finding that Ms. Looney failed to rebut this presumption. To the contrary, the record reveals that undue influence was brought to bear on Ms. Wade. Undue influence on a testatrix may be inferred from facts and circumstances. *Orr* v. *Love*, 225 Ark. 505, 283 S.W.2d 667 (1955). We have long defined undue influence that invalidates a will and which the law condemns as "not the legitimate influence which springs from natural affection, but the malign influence which results from fear, coercion, or any other cause that deprives testator of his free agency in the disposition of his property." *McWilliams* v. *Tinder*, 256 Ark. 994, 511 S.W.2d 480 (1974); *Parette* v. *Ivy*, 209 Ark. 364, 190 S.W.2d 441 (1945). In the present case, Ms. Wade was in fear that no one would care for her in her declining years because of her small monthly income, so she made her will in favor of the care center owner. In testimony, Ms. Looney's daughter testified regarding the circumstances surrounding the signing of the second will:

Q. What did she do while you were in there [during the signing]?

A. She talked.

Q. What did she say?

A. She just said what she had—what she wanted to be

given to my mom and what the bank had, and she wanted to be taken care of until her death.

Q. Who wanted to be taken care until. . .

A. Ms. Edna did.

Q. So, Edna said, I want to be taken care of the rest of my life?

A. Yes.

Q. Was that in response to her saying, Avanell, I am going to give you this to take care of me the rest of my life? Is that how you thought it was being said?

A. She just wanted someone to take care of her.

Q. So, she was asking your mom to draw up this will to be taken care of the rest of her life?

A. To be guaranteed, yes.

One of the items constituting undue influence, fear, is clearly present from this testimony.

There are other indicia of undue influence in the record. First, Ms. Looney was the owner and administrator of the residential care center; Ms. Wade was completely dependent on here for her well-being and care. As such, Ms. Looney owed her a fiduciary duty to protect her, not to gain financially from her advanced age and weakened physical condition. Ms. Looney was well paid by Ms. Wade for her care.

Second, Ms. Looney testified that she had taken Ms. Wade to see an attorney at least two times, yet it never occurred to her to have that attorney work on Ms. Wade's new will, nor did Ms. Looney see anything wrong with drafting a will in her favor and having her close kin witness it.

Third, testimony at trial of Appellant and her witnesses was conflicting and cast doubt on what really happened when the second will was signed.

■ Giving due deference to the superior position of the probate judge, we do not find that the probate judge's findings were clearly erroneous.

Affirmed.