## Jack WELLS and Reba Wells *v.* The ESTATE of Reba A. WELLS

95–1299                                               922 S.W.2d 715

Supreme Court of Arkansas
Opinion delivered June 3, 1996

*Michael J. Medlock*, for appellants.

*Paul R. Post*, for appellee.

TOM GLAZE, Justice. This litigation arose after Reba A. Wells died on May 13, 1994. Five days later, Ms. Wells's stepson, Jack Wells, filed a petition in probate court, submitting an untitled instrument dated May 6, 1994, as Ms. Wells's last will, and requesting he be appointed executor. On May 19, 1994, Michie Daniels, Ms. Wells's niece, petitioned the probate court, offering an instrument dated July 8, 1993, entitled the Last Will and Testament of Reba A. Wells. After a hearing, the trial judge declined to probate the instrument proffered by Jack Wells, holding the instrument was not a will, nor properly executed as such. The judge concluded (1) the instrument failed to reflect it was a will, (2) it was not executed as a will under Ark. Code Ann. § 28-25-103 (1987), and (3) the decedent, Ms. Wells, never declared before a witness that the instrument was a will. Furthermore, the judge held the proof of will accompanying the instrument submitted by Jack Wells was not supported by the evidence. Finally, he found that, when she executed the May 6, 1994 instrument and other related documents, Reba A. Wells was under duress and undue influence. The probate judge admitted to probate the Reba A. Wells will dated July 8, 1993, finding it properly executed and valid.

In this appeal, Jack Wells challenges all of the probate judge's findings in holding the May 6, 1994 instrument to be invalid. He argues that, while Reba A. Wells may not have declared to the witnesses that the May 6, 1994 instrument was her will, such a declaration was not required. *See Faith*, 286 Ark. 403, 692 S.W.2d 239 (1985) (court stated it is not required that a testator recite precisely the words "this is my will," although that is obviously the preferred practice). Nor, he argues further, was it impermissible for one of the two witnesses to be the notary who subscribed the instrument and accompanying proof of will. Wells relies on the principle that, where there is no indication of fraud, deception, undue influence, or imposition, this court avoids strict technical construction of statutory requirements in order to give effect to the testator's wishes. *Faith* v. *Singleton*, 286 Ark. 403, 692 S.W.2d 239. In sum, Wells argues that the facts of this case do not call for the strict application of § 28-25-103 and its requirement for the proper execution of a will; therefore, the trial judge erred in refusing to probate the May 6, 1994 instrument as Reba Wells's last will. We

cannot agree.

■ We first point out that probate cases are reviewed *de novo* on appeal, and this court will not reverse unless the findings of the probate judge are clearly erroneous. *Looney* v. *Estate of Wade*, 310 Ark. 708, 839 S.W.2d 531 (1992). Due deference will be given to the superior position of the probate judge to determine the credibility of the witnesses and the weight to be accorded their testimony. *Id*. In the typical will contest, the party contesting the validity of the will has the burden of proving by a preponderance of the evidence that the testator lacked mental capacity at the time the will was executed or that the testator acted under undue influence. *Id*. The probate judge here found the evidence showed clearly that Reba A. Wells was under duress and undue influence when she executed the May 6, 1994 instrument and therefore the instrument should not be found to be Reba's will.

Jack Wells argues that the probate judge erred because there was no credible evidence of malign influence on his and his family's part. He points to the evidence he presented at the hearing that he and his wife took care of Reba after her husband died, and he was named on Reba's checking account. Jack's wife testified that Reba spent holidays with their family and pictures were introduced of these family events. His wife also related that it was Reba, not Jack Wells, who requested the May 6 instrument be prepared. Dr. David Staggs also testified that, in his view, Reba was capable of managing and handling her business affairs.

Other strong evidence conflicted with that presented by Jack Wells. For instance, Reba's niece, Doris Lundeen, testified that Jack Wells did not contact any of the nieces for three days after Reba was hospitalized for her heart attack in March 1994; and Jack had asked Reba's sister not to call. Niece Michie Daniels said that Jack Wells told her and others that they could not see Reba because of doctor's orders, but hospital personnel allowed them to do so. Franklin Wilder, Reba's attorney, said that Reba called him, saying she had been a prisoner held by Jack Wells, that Jack Wells and others made her sign a bunch of papers, and that she did not know what she had signed. Wilder testified Reba had said that they were trying to get her house and that she wanted her niece to come rescue her. Another niece of Reba's, Barbara Barnes, testified that Reba said Jack and his wife had mistreated her, and she was afraid of him. Barnes quoted Reba as saying that Jack and his family were holding

her prisoner and that Jack had taken her someplace to sign something; she did not know what it was, but was afraid she signed her house away. A neighbor also testified confirming Jack had been mean to Reba after they had gotten what they wanted from her.

■ Although there was considerable other testimony introduced below, the foregoing testimony shows that, whether Reba was under duress and undue influence when she signed the May 6, 1994 instrument the Jack Wells family had prepared, was very much in issue. Based upon the record before us, we cannot say the probate judge was clearly erroneous in finding duress and undue influence and refusing to probate the May 6 instrument as Reba's last will.

Jack Wells's other argument is that the probate judge erred in probating the other titled instrument, July 8, 1993 Last Will and Testament of Reba A. Wells, because it had been revoked by an Inter Vivos Trust executed on February 24, 1994, revoking all prior wills. Wells does not otherwise contest the validity and execution of the 1993 will.

First, while not argued, Wells probably has no standing to raise the issue since we find nothing in the record except the May 6, 1994 instrument that purports to give him any interest in the trust or the July 8 will. Nonetheless, his argument is without merit in any event. The revocation of wills is governed by Ark. Code Ann. § 28-25-109 (1987), which provides as follows:

(a) A will or any part thereof is revoked:

(1) By a subsequent will which revokes the prior will or part expressly or by inconsistency; or

(2) By being burned, torn, cancelled, obliterated, or destroyed, with the intent and for the purpose of revoking it by the testator or by another person in his presence and by his direction.

(b) If, after making a will, the testator is divorced or the marriage of the testator is annulled, all provisions in the will in favor of the testator's spouse so divorced are revoked. With these exceptions, no will or any part thereof shall be revoked by any change in the circumstances, condition, or marital status of the testator; subject, however, to the provisions of § 28-39-401.

(c) Where there has been a partial revocation, reattestation of the remainder of the will shall not be required.

■ In construing § 28-25-109, we have uniformly held that the only methods of revoking a will are those enumerated in the statute. *In Re Estate of O'Donnell*, 304 Ark. 460, 803 S.W.2d 530 (1991); *Mosely v. Mosely*, 217 Ark. 536, 231 S.W.2d 99 (1950). Section 28-25-109 does not provide that a prior will can be revoked by a trust instrument, nor is there any evidence that Reba's July 8, 1993 will was revoked by any method authorized under § 28-25-109.

For the reasons above, we affirm.

DUDLEY, J., not participating.