Connie BELL *v.* Merrie HUTCHINS, in the Matter of the Estate of Alvin R. Hutchins, Deceased

CA 07-78                                                    268 S.W.3d 358

Court of Appeals of Arkansas
Opinion delivered November 14, 2007

*Tennille H. Price* and *Gary D. McDonald*, for appellant.

*Burbank Dodson & Barker, PLLC*, by: *Don B. Dodson*, for appellee.

ROBERT J. GLADWIN, Judge. Appellant Connie Bell appeals the June 28, 2006 judgment, of the Union County Circuit Court, finding that the last will and testament of decedent Alvin R. Hutchins, dated September 15, 2005, is invalid and setting aside the order admitting it to probate. Appellant contends that the circuit court erred in finding that she procured the will and that she had unduly influenced Alvin R. Hutchins to make the will. We reverse the circuit court's finding of procurement and remand for proceedings consistent with this opinion.

Mr. Alvin R. Hutchins lived in Arkansas for fifteen years prior to his death. During that time, his daughter, who lives out of state, did not visit him, but Mr. Hutchins made it known that his daughter would inherit all that belonged to him upon his death. Mr. Hutchins hired appellant Connie Bell to be his housekeeper in early 2005 after he had suffered some falls and had become too feeble to care for himself and his home. Mr. Hutchins did not own a washing machine or dryer prior to his hiring appellant, but bought a set and had them installed in appellant's home in order that she might wash his clothes. Mr. Hutchins did not drive, but after he hired appellant, he bought a brand new GMC pick-up truck, which appellant drove. Mr. Hutchins also loaned appellant money for a deposit and first-month's rent on a house.

According to trial testimony, these purchases and financial transactions were out of the ordinary for Mr. Hutchins, who was said to have been frugal. His small house had no running hot water

and no toilet facilities indoors. A wood-burning stove provided heat for the house. However, it was established at trial that Mr. Hutchins was generous with his church and helped people in need. Friends became concerned about Mr. Hutchins's spending when the washing machine, dryer, and truck were purchased.

Appellant made an appointment for Mr. Hutchins with attorney Teresa Wineland for September 15, 2005. On that date, appellant drove Mr. Hutchins to Ms. Wineland's law office and waited in the truck. Mr. Hutchins asked Ms. Wineland to draft a new will, leaving the washing machine, dryer, truck, and half of the remainder of his estate to appellant, with the other half of the estate going to his daughter. After Mr. Hutchins executed the will, appellant kept it in her possession.

Friends who picked Mr. Hutchins up for church on Sunday mornings testified that appellant would help him get dressed for church. However, the last few Sundays of his life, appellant did not help Mr. Hutchins get ready for church. On Sunday, October 2, 2005, Mr. Hutchins was found on the floor of his home by a friend. He had apparently fallen and had lain on the floor for several days. He was taken to the hospital where he died a week later. Three days after his death, appellant filed a petition to probate the September 15, 2005 will. The will was admitted to probate on October 12, 2005, and a motion to contest the will's admission was filed on November 28, 2005, by Merrie Hutchins, Mr. Hutchins's daughter.

After a hearing, the trial court found that appellant had procured the will, effectively shifting the burden from the will challenger, Merrie Hutchins, to the proponent of the will, appellant. Because of the finding of procurement, the trial court found that a rebuttable presumption of undue influence arose and that the burden of proof was on the appellant to prove beyond a reasonable doubt that the testator had both the testamentary capacity and the freedom from undue influence to execute a valid will. The trial court found that Mr. Hutchins had the mental capacity to execute the will on September 15, 2005. However, the trial court found that, based upon the facts, appellant failed to rebut the presumption of undue influence and declared the will invalid. This appeal follows.

We review probate proceedings de novo, but we will not reverse the trial court's decision unless it is clearly erroneous. *Moore v. Sipes*, 85 Ark. App. 15, 146 S.W.3d 903 (2004). A decision is

clearly erroneous when the reviewing court is left with a definite and firm conviction that a mistake has been made. *Walker v. Torres,* 83 Ark. App. 135, 118 S.W.3d 148 (2003). When reviewing the proceedings, we give due regard to the opportunity and superior position of the trial judge to determine the credibility of the witnesses. *Moore, supra.*

In a typical will contest, the party contesting the validity of the will has the burden of proving by a preponderance of the evidence that the testator lacked mental capacity at the time the will was executed or that the testator acted under undue influence. *Looney v. Estate of Wade,* 310 Ark. 708, 839 S.W.2d 531 (1992). However, where a beneficiary under the will actually drafts or procures the will, a higher burden of proof is applied under Arkansas law:

> In *Greenwood v. Wilson,* 267 Ark. 68, 588 S.W.2d 701 (1979), we held that the proponent of a will who is a beneficiary and who drafted the will or caused it to be drafted has the burden to prove beyond a reasonable doubt that it was not the result of undue influence and that the testator had the mental capacity to make the will. We again held in *Smith v. Welch,* 268 Ark. 510, 597 S.W.2d 593 (1980), that where a beneficiary procures the making of a will, "it is incumbent upon those who, in such a case, seek to establish the will, to show beyond reasonable doubt, that the testator had both such mental capacity, and such freedom of will and actions as are requisite to render a will legally valid."

*Park v. George,* 282 Ark. 155, 159, 667 S.W.2d 644, 647 (1984). *See also Short v. Stephenson,* 238 Ark. 1048, 386 S.W.2d 501 (1965).

Appellant contends that the circuit court erred when it found that she procured the will and thereafter shifted to her the burden to prove beyond a reasonable doubt that on September 15, 2005, Alvin Hutchins had both the testamentary capacity to execute a valid will and freedom from undue influence. She argues that under *Looney, supra,* she did not procure the will, as procurement requires actually drafting the will for the testator or planning the testator's will and causing him to execute it. She maintains that there was no evidence that she actually drafted the will or that she planned it or caused Mr. Hutchins to execute it.

Appellee contends that the instant case is similar to *Looney,* wherein the procurer of the will, Ms. Looney, was the administrator of the nursing home wherein the elderly Ms. Wade resided.

Ms. Wade feared that no one would care for her in her declining years. The court noted that the proponent of the will was Ms. Wade's caregiver and that she had a fiduciary duty to protect Ms. Wade and not to gain financially from her advanced age and weakened physical condition. Appellee argues that, here, Mr. Hutchins relied upon appellant as a cook and housekeeper, and rather than protect him, appellant took advantage of him financially by helping him secure a will that favored her in derogation of all prior representations as to what his natural disposition of his property to his daughter would have been.

The circuit court found that appellant's acts of procurement were that she was a beneficiary under the will who called the lawyer's office to make the appointment for Mr. Hutchins, drove Mr. Hutchins to the appointment, and waited in the truck for him while he kept the appointment. Further, appellant kept the will in her possession following the appointment. The trial court did not find credible her testimony that she did not know the content of the will or why the decedent went to the lawyer's office.

*Rose v. Dunn*, 284 Ark. 42, 679 S.W.2d 180 (1984), is similar to the instant case, but has a different result. There, Mr. Dunn drove the testator to the lawyer's office and participated in the initial discussions concerning making a will. However, the court held that the testator freely and voluntarily executed his own will, and that Mr. Dunn did not procure the making of the will. The court relied upon the case of *Park*, *supra*, in determining what it means to procure a will, and stated as follows:

> In the case of *Park v. George, Pers. Rep.*, 282 Ark. 155, 667 S.W.2d 644 (1984), an attorney who named himself as a beneficiary in the amount of $10,000.00 drew a will for an 88 year old woman who had been hospitalized and sedated and who appeared confused and upset. In the case at bar, Delma Dunn merely drove Mr. Pierce to the attorney's office and participated in the initial discussions concerning making a will. The court found that Mr. Pierce was possessed of both testamentary capacity and freedom of will. Where a competent individual freely and voluntarily executes his own will, it cannot be said that another procured the making of that will.

*Rose*, 284 Ark. at 47, 679 S.W.2d at 183.

Here, appellant merely called the lawyer's office to make the appointment for Mr. Hutchins. Subsequently Ms. Wineland, the attorney, contacted Mr. Hutchins personally to make

sure he wanted the appointment. Appellant was not present in the office when the will was executed. Further, Ms. Wineland testified that Mr. Hutchins explained to her the reasoning behind dividing his estate between his daughter and appellant. Ms. Wineland stated that she was convinced that Mr. Hutchins had the proper mental capacity to do what he did. Therefore, based upon *Rose*, we hold that the trial court erred in finding that appellant procured the will and shifting the burden of proof to her.

■ Further, we hold that the trial court made a proper finding of testamentary capacity as follows:

> As to testamentary capacity, the testimony of Teresa Wineland, who prepared and witnessed the Will, and Martha Kellum, the second witness, clearly established that Alvin Hutchins possessed the capacity to execute the Will on September 15. Decedent knew what he wanted to do, appeared coherent, and answered counsel's questions in a manner that indicated sufficient capacity on that day. The testimony of Martha Kellum confirmed the observations and conclusions of counsel.

Once testamentary capacity is established, the question of whether the testator was unduly influenced must be answered. We do not find error in the trial court's finding that Mr. Hutchins had the testamentary capacity to execute a will; however, because the trial court erroneously shifted the burden of proof to appellant, we reverse and remand for the trial court to act consistently with this opinion.

Reversed and remanded.

BIRD and HEFFLEY, JJ., agree.