2010 Ark. App. 594
**Deirdre FOSTER, Appellant**

v.

**Winifred FOSTER, Appellee.**

**No. CA 09–1310.**

Court of Appeals of Arkansas.

Sept. 15, 2010.

Rehearing Denied Oct. 27, 2010.

---

**13.** *Fox v. Fox,* 68 Ark. App. 281, 7 S.W.3d 339 (1999).

Orin Eddy Montgomery, Little Rock, for appellant.

Richard Franklin Hatfield, Little Rock, for appellee.

M. MICHAEL KINARD, Judge.

Appellee Winifred Foster filed this action to declare the validity of her will and Restatement to the Winifred L. Foster Living Trust dated June 26, 2007. The circuit court, sitting in the probate division, upheld the validity of the documents, and her granddaughter, appellant Deirdre Foster, appealed. We affirm.

*Facts*

Winifred Foster, who was born in 1916, has four grandchildren: Deirdre Foster, Peyton Foster, Louisa Foster, and Nayla Foster. Winifred's now-deceased son, Bryant, married twice. Louisa and Nayla are the daughters of Judith Foster, Bryant's first wife; Deirdre and Peyton were born during his second marriage. Judith and all of the grandchildren live out of state, and Winifred received care at home from an agency called Home Instead. Winifred owns a substantial amount of real and personal property. In 2006, Nayla, Deirdre, and Judith became convinced that Peyton had taken financial advantage of Winifred. According to the evidence introduced at the hearing, Peyton managed to obtain around $1,000,000 from Winifred through coercion.

On November 6, 2006, attorney William Haught drafted a will and trust for Winifred. In those documents, Deirdre was named as a beneficiary. After the creation of the trust, Nayla, Judith, and Deirdre worked together to complete the paperwork necessary for the transfer of Winifred's property to the trust. Winifred also gave her power of attorney to Nayla. In December 2006, Nayla filed a petition on behalf of Winifred for an order of protection from Peyton. On the petition, she checked the blank adjacent to the phrase "an adjudicated incompetent person" and wrote: "We are filing for guardianship of my grandmother because she has severe memory loss/dementia." Nayla took Winifred to the geriatric specialists at UAMS several times over the next year.

Around the time Winifred's property was transferred to the trust, an adult protective-services proceeding was initiated against Nayla. After the Arkansas De-

partment of Human Services ("DHS") held a hearing concerning allegations of financial abuse in April 2007, Nayla was exonerated of the charges. Although Deirdre and Nayla had originally cooperated in attempting to protect their grandmother's assets from what they claimed was overreaching by Peyton, they had a falling-out. Deirdre did not attend Nayla's DHS hearing, allegedly because she could not leave work. Nayla, however, took offense at Deirdre's apparent lack of support, as did Winifred.

On May 25, 2007, Winifred wrote a codicil to her will significantly reducing Deirdre's portion of her estate and providing that Nayla would receive almost all of her estate. After meeting with Winifred in a private appointment arranged by attorney Randy Looney, another attorney, Dennis Wilson, used Winifred's handwritten codicil to prepare a new will and restatement of trust. Winifred signed the new documents on June 26, 2007. These documents eliminated all beneficiaries except Nayla. Winifred's longtime friend and neighbor, Frank Aiello, along with Judith Foster witnessed the execution, of which Nayla made a video recording. Winifred also signed another document giving Nayla her power of attorney. Winifred gave the following explanation for the changes:

> My primary interest in restating my former trust agreement is to insure that my granddaughter Nayla Foster be made the sole beneficiary of my estate. I intentionally have not named Louisa Foster, Deirdre Foster, and Peyton Foster as beneficiaries in this agreement due to the fact they have either already taken from me their share of my estate or have never been a part of my life in the first place.

> Nayla Foster has been and continues to be a person I deeply love and trust, and

it is my desire that she inherit all of my remaining estate upon my death.

At Mr. Wilson's suggestion, Nayla took Winifred for an evaluation at St. Vincent Infirmary's Senior Health Clinic on June 27, 2007. Dr. Jennifer Co noted that Winifred had been diagnosed with Alzheimer's disease in January 2007. She had problems with short-term memory loss and relied on a home-care service to provide meals and administer medication. However, she was able to handle activities of daily living.

In August 2007, Louisa convinced Winifred to sign a document prepared by attorney Rick Sellars revoking Nayla's power of attorney. When Mr. Wilson learned of the attempted revocation, he and Mr. Sellars confronted Winifred about the document. Winifred's confusion at that time led Mr. Wilson to doubt her mental competence, and he filed an emergency petition for appointment of a guardianship on August 20, 2007. The next month, Winifred filed a petition to declare the validity of her June 2007 restatement of trust. She later amended her petition to request that the court also declare her June 26, 2007 will valid. Deirdre and Louisa responded that Winifred lacked testamentary capacity to sign the June 2007 documents.

At trial, the videotape of Winifred's execution of the documents was admitted into evidence. The video showed Mr. Wilson explaining the will to Winifred, who expressed her love for Nayla and desire for Nayla to have all of her property. Winifred signed the documents and then handed her pen to Mr. Aiello, who then signed as a witness. Mr. Aiello was sitting next to Winifred during the explanation and signing. He testified at trial that he remembered going to Winifred's house to sign some papers, but he didn't know what the papers were and didn't see Winifred sign them. Judith Foster testified that

she witnessed Winifred sign the documents in June 2007 and that she signed the will as a witness.

Mr. Wilson testified that Winifred was his only source of information when he prepared the will and that he saw Winifred, Mr. Aiello, and Judith sign the will, which Mr. Wilson notarized. He said that Mr. Aiello saw Winifred sign the will. He testified at length about Winifred's testamentary capacity and the circumstances surrounding the execution of the will, indicating that he found her to be competent on the day in question. Mr. Wilson also testified that Winifred paid him directly for his services.

At the conclusion of the trial, Deirdre's motion to conform her pleadings to the proof was granted. The circuit court entered a declaratory judgment in which it found that Winifred possessed testamentary capacity at the time that she signed the May 25, 2007 and the June 26, 2007 documents. Deirdre filed a motion for reconsideration and new trial, which was deemed denied, and then pursued this appeal.

## Standard of Review

We review probate matters de novo but will not reverse the circuit court's findings of fact unless they are clearly erroneous. *Fischer v. Kinzalow*, 88 Ark.App. 307, 198 S.W.3d 555 (2004). We defer to the superior position of the lower court sitting in a probate matter to weigh the credibility of the witnesses. *Id.*

## Discussion

For her appeal, Deirdre argues that the circuit court erred in entering the declaratory judgment for Winifred and in denying her motion for reconsideration for several reasons. First, she argues that Winifred failed to prove that she properly executed the will. Second, she argues that Nayla procured the will by exerting undue influence. Third, Deirdre argues that collateral estoppel prevented Winifred and Nayla from claiming that Winifred was competent when she executed her will. Fourth, she claims that Winifred and Nayla failed to introduce certain medical records. And finally, she asserts that the circuit court ignored evidence of incompetence and lack of testamentary capacity.

## I. *Execution*

Deirdre first argues that Winifred failed to prove that she executed her will in accordance with the requirements of Arkansas Code Annotated section 28–25–103 (Repl.2004), which, being in derogation of the common law, must be strictly construed. Specifically, she asserts that Winifred did not declare the will to be hers or ask the witnesses to witness her signature. She further contends that the circuit court was mistaken as to who bore the burden of proof.

Winifred responds that Deirdre did not raise this argument at trial or obtain a ruling on it. We agree that Deirdre did not develop this argument until she filed her motion for reconsideration. On appeal, Deirdre contends that simply amending her pleadings to conform to the proof at the conclusion of her case was sufficient to preserve this issue for appeal. We disagree. It was not apparent from the record that execution was contested at trial, and the circuit court did not rule on it. We will not consider arguments that were not raised before and ruled upon by the circuit court. *Taylor v. Taylor*, 369 Ark. 31, 250 S.W.3d 232 (2007).

Even if this argument had been raised below, the argument would fail because the evidence demonstrated that the will was properly executed. The execution of a will, other than a holographic will, must be

by the signature of the testatrix and of at least two witnesses. Ark.Code Ann. § 28–25–103(a) (Repl.2004). The testatrix must declare to the attesting witnesses that the instrument is her will and sign the will, and the attesting witnesses must sign at the request and in the presence of the testatrix. *Id.* § 28–25–103(b), (c).

 The requirement that the testatrix declare the instrument to be a will is called publication. *Faith v. Singleton,* 286 Ark. 403, 692 S.W.2d 239 (1985). No particular form of words is necessary in order to publish a will. *Id.* The fact of publication is to be inferred from all of the circumstances attending the execution of the will. *Id.* Although the preferred practice is for a testator or testatrix to recite the words "this is my will," it is not required. *Id.* Nor is strict construction of the statute required; where there is no indication of fraud, deception, undue influence, or imposition, the appellate court avoids strict technical construction of statutory requirements in order to give effect to the testatrix's wishes. *Id.* The same is true regarding the statutory requirement that the attesting witnesses must sign at the request and in the presence of the testatrix. *Hanel v. Springle,* 237 Ark. 356, 372 S.W.2d 822 (1963). Depending upon the circumstances, substantial compliance can be sufficient. *Id.; Fischer, supra.* If a will appears to be duly executed and the attestation is established by the witnesses to its execution, although they do not remember the transaction, it will be presumed, in the absence of evidence to the contrary, that the will was executed in compliance with the requirements of the law. *Upton v. Upton,* 26 Ark.App. 78, 759 S.W.2d 811 (1988); *Green v. Holland,* 9 Ark.App. 233, 657 S.W.2d 572 (1983).

Here, all of the elements of proper execution have been met. Winifred's will was signed by Winifred, Mr. Aiello, and Judith Foster. As the video of the execution shows, Mr. Aiello signed in Winifred's presence, after hearing Mr. Wilson explain the will and Winifred express her desire for the will. According to her testimony, Judith Foster was also present when this occurred. Although Winifred did not state specifically, "this is my will," publication can be inferred from her previous explanation—in the presence of the witnesses—that she wanted Nayla to have all of her property.

 Without citation to authority, Deirdre also asserts that the video of the execution by Winifred lacked foundation. She did not, however, challenge the video's foundation at trial. A timely, specific objection at trial is essential in order to afford the trial court the opportunity to rule. *Bohannan v. Underwood,* 300 Ark. 110, 776 S.W.2d 827 (1989). Error may not be predicated upon a ruling admitting evidence unless there is such a timely, specific objection. *Id.*

## II. *Procurement*

 Deirdre next argues that Nayla procured the will and trust and had the burden of proving that there was no undue influence. She stresses that Nayla had been Winifred's financial advisor; that the date on Winifred's handwritten codicil was in Nayla's handwriting; that Nayla accompanied Winifred to the meetings to draft and sign the documents; that Nayla's mother, Judith, was present at the execution; and that Winifred's feeble condition made her susceptible to undue influence. Deirdre, however, did not raise the issue of procurement at trial or obtain a ruling on it. She first made this argument in her motion for reconsideration. This issue, therefore, is not preserved for appeal. *See Taylor, supra.*

Even so, the evidence did not establish that Nayla procured the will. In a typical will contest, the party contesting the validity of the will has the burden of proving by a preponderance of the evidence that the testatrix lacked mental capacity at the time the will was executed or that the testator acted under undue influence. *Bell v. Hutchins,* 100 Ark.App. 308, 268 S.W.3d 358 (2007). However, where a beneficiary under the will actually drafts or procures the will, Arkansas law applies a higher burden of proof. *Id.* The proponent of a will who is a beneficiary and who procured the will has the burden of proving beyond a reasonable doubt that the will was not the result of undue influence and that the testatrix had the mental capacity to make the will. *Id.*

The record reflects that it was attorney Randy Looney who contacted Mr. Wilson about preparing the June 2007 documents and made the appointment for Winifred to meet with attorney Wilson. Winifred was Mr. Wilson's only source of information about her wishes, and Mr. Wilson talked with her privately and at length about her new will. Also, Winifred paid Mr. Wilson directly. Furthermore, Winifred clearly stated in the video that she intended Nayla to be her sole beneficiary. Winifred's distribution was understandable, considering her closeness with Nayla as opposed to her other grandchildren. Therefore, Deirdre did not prove that Winifred's will was executed with undue influence.

### III. *Collateral Estoppel*

For her third point, Deirdre argues that Winifred and Nayla were collaterally estopped from asserting that Winifred was competent to sign the June 2007 documents because Nayla had filed a pleading asserting that Winifred was incompetent in December 2006 and because Mr. Wilson filed a proceeding for guardianship of Winifred in August 2007. Winifred correctly points out that Deirdre failed to raise this issue below or obtain a ruling on it. As we previously stated, we will not consider arguments raised for the first time on appeal. *Taylor, supra.*

Regardless of whether Deirdre preserved this issue, there has been no judicial finding that Winifred was incompetent. Collateral estoppel, also known as issue preclusion, bars relitigation of issues of law or fact previously litigated, provided that the party against whom the earlier decision is being asserted had a full and fair opportunity to litigate the issue in question and that the issue was essential to the judgment. *Morgan v. Turner,* 2010 Ark. 245, 368 S.W.3d 888. To apply collateral estoppel, the following elements must be present: (1) the issue sought to be precluded must be the same as that involved in the prior litigation; (2) the issue must have been actually litigated; (3) the issue must have been determined by a valid and final judgment; and (4) the determination must have been essential to the judgment. *Id.* Although collateral estoppel may be asserted by a stranger to the first judgment, the party against whom it is asserted must have been a party to the earlier action and must have had a full and fair opportunity to litigate the issue in the first proceeding. *Id.*

In this case, there had been no prior valid and final judgment concerning Winifred's testamentary capacity on June 26, 2007, nor had Winifred been adjudicated incompetent. Although there may have been plans to seek an adjudication of incompetence for Winifred, at no time was the issue actually litigated. Therefore, collateral estoppel could not be applied in this case. Deirdre's third argument is completely without merit.

### IV. *Failure to Introduce Records*

Deirdre argues in her fourth point that Winifred and Nayla failed to introduce into evidence records of Winifred's competency evaluation at St. Vincent Infirmary in June 2007. Therefore, she argues, there arose a legal presumption that the evidence would be unfavorable to Winifred's case. Winifred correctly responds that Deirdre failed to raise this argument below. Again, we will not entertain arguments on appeal that were not raised before the trial court. *Taylor, supra.* Also, Deirdre does not assert any authority to support her contention that a circuit court's failure to recognize such a presumption constitutes reversible error. We will not consider an argument that is not supported by citation to authority or convincing argument. *Weatherford v. State*, 352 Ark. 324, 334, 101 S.W.3d 227, 235 (2003). Therefore, this argument is also without merit.

### V. *Testamentary Capacity*

Deirdre concludes her brief by arguing that the circuit court arbitrarily ignored medical evidence showing that Winifred lacked testamentary capacity. Generally, testamentary capacity means that the testatrix must be able to retain in her mind, without prompting, the extent and condition of her property, to comprehend to whom she is giving it, the relation of those entitled to her bounty, and the deserts of those whom she excludes from her will. *Fischer v. Kinzalow*, 88 Ark. App. 307, 198 S.W.3d 555 (2004). Complete sanity in a medical sense at all times is not essential to testamentary capacity, provided that capacity exists at the time the will is executed and that it is executed during a lucid interval. *Id.* Evidence of the testatrix's mental condition, both before and after execution of the will at issue, is relevant to show her mental condition at the time she executed the will. *Id.* The test is whether, at the time the will was executed, the testatrix had a fair comprehension of the nature and extent of her property and to whom she was giving it. *Id.*

In this case, the circuit court had sufficient evidence to conclude that Winifred had the requisite testamentary capacity on the date in question. The circuit court had before it Mr. Wilson's testimony, in which he described Winifred as "coherent, consistent and very mobile" when she signed the documents in June 2007. It also had the benefit of the video recording of the execution, which showed Mr. Wilson explaining the will to Winifred and Winifred explaining her desires for distribution of her property. Furthermore, the circuit court had the benefit of the testimony of Frank Aiello and Judith Foster, who witnessed Winifred execute the documents. Although there was also evidence presented that Winifred suffered from some degree of dementia, it was within the circuit court's discretion to weigh the evidence and credibility of witnesses. The record contains no indication that the circuit court refused to consider such evidence, nor was there any evidence presented that Winifred suffered from a bout of dementia on the day the documents were executed. Therefore, we find no error in the circuit court's ruling that Winifred had testamentary capacity.

Affirmed.

PITTMAN and GLOVER, JJ., agree.