

# ARKANSAS COURT OF APPEALS

DIVISION IV
**No.** CV–14–711

|  |  |
|---|---|
| CARL BEAVERS, SR.<br>APPELLANT<br><br>V.<br><br>TINA WILLIAMS, as executrix of the<br>Estate of Emma Gene Shipp, deceased<br>APPELLEE | **Opinion Delivered** March 4, 2015<br><br>APPEAL FROM THE VAN BUREN<br>COUNTY CIRCUIT COURT<br>[NO. PR–2011-69]<br><br>HONORABLE H.G. FOSTER, JUDGE<br><br>REVERSED AND REMANDED |

## BRANDON J. HARRISON, Judge

Carl Beavers, Sr. appeals a Van Buren County Circuit Court order that granted summary judgment to Tina Williams and awarded her $11,895 in attorney's fees as a Rule 11 sanction. Because the parties' dispute over Emma Gene Shipp's last will and testament presents genuine issues of material fact that need to be decided by a fact-finder, we reverse the summary judgment and remand. We also reverse the Rule 11 sanction because the circuit court abused its discretion in finding a violation on this record.

### I. *Background*

Emma Gene Shipp lived in Clinton, Arkansas before she died in 2011. She had no children, and her husband predeceased her. Shipp's 2007 will names two beneficiaries: her brother Carl Beavers, Sr. and her caregiver Tina Williams. The circuit court admitted Shipp's will to probate and appointed Williams as executrix. Soon after, Beavers



petitioned the court to set the will aside, alleging that Williams had exercised undue influence over Shipp.

In August 2012, Williams moved the court for Rule 11 sanctions, attorney's fees, and costs, because Beavers's petition to set the will aside had "no basis in fact." Beavers countered, among other things, that Williams failed to respond to his amended petition to set aside the will and that the Rule 11 motion appeared to be "retaliatory in nature."

More than one year later, in October 2013, Williams moved for summary judgment. In due course, the court convened a hearing on Williams's motions for summary judgment and Rule 11 sanctions. In April 2014, the court granted Williams summary judgment against Beavers's petition; it also found a Rule 11 violation and issued a sanction in the form of $11,895 in attorney's fees. Beavers appeals that order.

He has raised these points on appeal:

• Summary judgment was improper because genuine issues of material fact exist on whether Shipp was unduly influenced to will her estate to Williams.

• The circuit court abused its discretion in granting Williams's Rule 11 motion because Williams offered no evidence to support it.

• The court abused its discretion in finding a Rule 11 sanction and awarding nearly $12,000 in attorney's fees because it did not explain how the fee amount was determined and why it was appropriate.

## II. *The Summary Judgment*

To support her motion for summary judgment, caregiver Williams filed seven affidavits. All the affiants stated that they knew Shipp personally. The gist of these affidavits—which are rather rich in testimonial detail—was that Shipp met with a lawyer alone to make her will; that her express wish was to give the bulk of her estate to Tina

Williams so long as Williams remained her caregiver until Shipp's death; that Shipp had a strained relationship with her brother Carl Beavers, Sr.; that Shipp was a strong-willed, capable woman who never cowed to anyone and never lost her mental capacity; and that Shipp was not unduly influenced by Tina Williams. In Williams's view, Beavers's petition to set aside the will "constitutes a cynical attempt . . . to obtain the assets of his sister's estate through intestacy[.]"

In response, Beavers presented five affiants: Shipp's sister, two cousins, and two childhood friends. These affidavits—which admittedly lack the factual precision and narrative thrust of Williams's affidavits—essentially assert that Shipp feared being alone with no one to provide for her daily care; that Williams took Shipp to "obtain her will and assisted in its procurement;" and that the will was a "product of some undue influence exercised during extended private times when only the two of them were together." Beavers maintained that his affidavits create a genuine issue of material fact on undue influence.

A circuit court should only grant summary judgment when it is clear that there are no genuine issues of material fact to be litigated and the moving party is entitled to judgment as a matter of law. *Benton Cnty. v. Overland Dev. Co.*, 371 Ark. 559, 268 S.W.3d 885 (2007). Once a moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *Id*. On appeal, we determine if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of its motion leave a material fact unanswered. *Id*. This court views the evidence

3

in the light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Id.*

With the well-known standard stated, we turn to Arkansas law relevant to the petition to set the will aside. The party contesting the validity of the will has the burden of proving by a preponderance of the evidence that the testator lacked mental capacity when the will was executed or that the testator acted under undue influence. *Looney v. Estate of Wade*, 310 Ark. 708, 839 S.W.2d 531 (1992). But if a beneficiary under the will is the one who actually drafts or procures the will, then the beneficiary must prove beyond a reasonable doubt that the will was not the result of undue influence and that the testator had the mental capacity to make the will. *Greenwood v. Wilson*, 267 Ark. 68, 588 S.W.2d 701 (1979). Simply put, the person contesting the will based on undue influence normally bears the burden of proof, but a rebuttable presumption of undue influence is created if the person contesting the will can prove that the beneficiary drafted or procured the will. *Bell v. Hutchins*, 100 Ark. App. 308, 268 S.W.3d 358 (2007).

Undue influence is the "malign influence which results from fear, coercion, or any other cause that deprives testator of his free agency in the disposition of his property." *Looney*, 310 Ark. at 711, 839 S.W.2d at 533. To prove undue influence, the moving party must show an influence over the donor such that it overcame the donor's free will and caused the donor to make a donative transfer that he or she would not otherwise have made due to fear, fraud, or overreach. *See Carpenter v. Layne*, 2010 Ark. App. 364, 374 S.W.3d 871. Undue influence is not usually proven directly and may be inferred from facts and circumstances. *Orr v. Love*, 225 Ark. 505, 283 S.W.2d 667 (1955). Arkansas

courts look at many factors when deciding undue-influence issues, including the testator's physical and mental condition, the opportunity of the beneficiary "to mold the mind of the testator to suit his or her purposes," the existence of suspicious circumstances, and whether the property disposition is a natural one. *See id.*; *see also Pyle v. Sayers*, 344 Ark. 354, 39 S.W.3d 774 (2001). Cases involving undue influence frequently depend on the credibility of witnesses. *Pyle*, 344 Ark. at 361, 39 S.W.3d at 779.

The question here is whether the summary-judgment record, on a plenary review, supports the circuit court's order that no material factual dispute exists as to whether Shipp was unduly influenced to will her estate to caregiver Williams. Viewing the evidence in the light most favorable to the losing party (Beavers), and without weighing the evidence or determining the affiants' credibility, we conclude that Beavers has identified some genuine issues of material fact that prevent summary judgment.

Beavers argues that there is a material-fact dispute on whether "Shipp's overwhelming fear of being abandoned as her health declined—a fear she confided to at least five of her closest friends and family members—caused her to trade her estate for Williams's promise to care for her." The affidavits Beavers filed support this point. They all essentially state that Shipp had a sizeable "fear of being left alone" without a caregiver. Shipp's cousin, Veda Trawick, also stated in her affidavit that her personal observation of Shipp's physical and mental condition raised questions for her about the circumstances surrounding the making of the will. These statements create a fact question about Shipp's susceptibility to undue influence.

The affidavits raise another factual dispute on undue influence: the opportunity to exert undue influence. Beavers argues that Williams's status as a caregiver and car driver for Shipp provided an opportunity to exert undue influence. Shipp's sister, Betty Ruth Bonds, stated in her affidavit that "[a]s far as I know, after Emma Gene Shipp hired [Williams], no one took Emma Gene Shipp anywhere except Tina Williams . . . Williams took Emma Gene Shipp to obtain her will." Affiant James Beavers also claimed that Williams exerted undue influence over Shipp "during extended private times when only the two of them were together." Betty Ruth Bonds characterized Williams as becoming "very bossy." Shipp's friend, Verniece Harness, reported that Shipp had planned on firing Williams and that she believed Williams had "tricked [Shipp] into making her Last Will and Testimony." Finally, Veda Trawick, Shipp's first cousin, questioned whether Shipp made an unnatural property disposition. Trawick's affidavit states that Shipp "had in her possession many of the items that had belonged to their mother and father that should have gone to her brother" and "[i]t is strange, indeed, that she would pass all of these assets to her caregiver to the exclusion of any of her family."

These statements, read as a whole, establish a genuine and material factual dispute on undue influence. That Williams presented more factually robust affidavits does not, in and of itself, justify the summary judgment on this record. On the whole, Beavers presented enough affiant testimony to survive summary judgment. 2 David Newbern, et al., *Arkansas Civil Practice and Procedure* § 26:4, at 552 (5th ed.) ("The quantum of evidence that the non-moving party must produce to defeat a motion for summary judgment does



not appear to be particularly great."). We therefore reverse the court's grant of summary judgment.

## III. *The Rule 11 Violation*

The circuit court's determination that a Rule 11 violation occurred is directly linked to its summary-judgment ruling. In its one order, the court stated: "there is no basis in fact to support the motion to set aside the will filed herein by Carl Beavers, Sr. Accordingly, the Court hereby awards Tina Williams her attorney fees." To obtain an attorney's fee pursuant to Arkansas Rule Civil Procedure 11, the moving party must show that an attorney or party signed a pleading not grounded in fact, not warranted by existing law or good-faith argument for a change in the law, or that it was filed for an improper purpose. Ark. R. Civ. P. 11 (2014); *Chlanda v. Killebrew*, 329 Ark. 39, 945 S.W.2d 940 (1997). A Rule 11 sanction is supportable when a party pursues a claim that is not grounded in fact and only when it is patently clear that the claim has no chance of success. *Chlanda*, 329 Ark. at 41, 945 S.W.2d at 941. We review a circuit court's determination of whether a Rule 11 violation has occurred under an abuse-of-discretion standard. *Weaver v. City of W. Helena*, 367 Ark. 159, 238 S.W.3d 74 (2006).

We agree with Beavers that the court abused its discretion in finding a Rule 11 violation on this record. Sanctions are not appropriate just because a court disagrees with a party's position or the evidence a party presents. *Chlanda*, *supra*. Beavers's petition to set aside the will was sufficiently grounded in fact and warranted by existing law to avoid a Rule 11 sanction. So we reverse the determination that Rule 11 was violated and the related attorney's fee sanction.



Reversed and remanded.

WHITEAKER and VAUGHT, JJ., agree.

*George Carder, P.A.*, by: *George Carder*; and *Brett D. Watson, Attorney at Law, PLLC*, by: *Brett D. Watson*, for appellant.

*Graddy & Adkisson, LLP*, by: *William C. Adkisson*, for appellee.